**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID R. LEASE,** | : | |
| | : | |
| **Plaintiff** | : | **Civil Action No. 1:07-CV-0003** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **DOUGLAS FISHEL et al.,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Before the Court are Rule 12(b)(6) Motions to Dismiss filed by Defendants Brian Coffey ("Coffey") (Doc. No. 23); George A. Taughinbaugh ("Taughinbaugh") and Ron Plank ("Plank") (Doc. No. 25); Ronald Balutis ("Balutis"), Timothy Beard ("Beard"), and Hamilton Township (Doc. No. 28); and David Ogle ("Ogle") and Douglas Fishel ("Fishel") (Doc. No. 40). Additionally, Defendants Plank and Taughinbaugh have filed a motion for sanctions against Plaintiff's counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure.  (Doc. No. 27.) Finally, Plaintiff's counsel, Don Bailey, has moved to withdraw from the case due to irreconcilable differences that have developed with the Plaintiff.  (Doc. No. 56.)  These motions are ripe for disposition, and the Court will consider them together in this Memorandum.  For the following reasons, Plank and Taughinbaugh's motion to dismiss and motion for sanctions will be granted, Lease will be required to file an amended complaint with the Court, the remaining motions to dismiss will be denied as moot, and Mr. Bailey will be allowed to withdraw as counsel for the Plaintiff.

**I.    BACKGROUND**

      **A.  Factual Background**

The allegations in this complaint arise out of a land development dispute between Defendant Hamilton Township and the Plaintiff David R. Lease ("Lease").  (Doc. No. 1 ¶ 8.) Lease alleges that the Defendants have acted unlawfully together to intimidate and retaliate against him because he "vigorously and successfully defended his rights . . . ." in resolving the dispute with Hamilton Township in state court.  (Id. ¶ 19.)  Many of the Defendants have no apparent connection to each other, but Lease alleges that their retaliatory conspiracy "to harm or otherwise injure the plaintiff" in furtherance of the interests of Hamilton Township is "evidenced by all of the defendants' individual unlawful actions."  (Id.)

## B.  Procedural Background

This case comes before the Court in an unusual procedural posture, in that the alleged retaliation and conspiracy has already been the subject of one action before this Court (involving some of the same parties and events that underlie the present complaint), captioned as *Lease v. Tyler*, at docket number 1:05-CV-00618 ("Lease I").  Before commencing the present action, Lease sought leave to file a second amended complaint in Lease I to include the claims presented in the instant action.  (Lease I, Doc. No. 44.)  The Court denied this request as untimely (Lease I, Doc. No. 54), and Lease commenced the present case on January 2, 2007.  (Doc. No. 1.)  The Court ultimately granted summary judgment for the Defendants in Lease I on June 30, 2008, (Lease I, Doc. No. 82), after the present motions to dismiss were already ripe.

## C.  Standard of Review

The Supreme Court's recent opinion in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), has altered the standard of review for a motion to dismiss pursuant to Rule 12(b)(6). Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008).  In construing the Rule

12(b)(6) standard generally, the Court required the plaintiff to provide more than a formulaic

recitation of a claim's elements that amounted to mere labels and conclusions.  <u>Twombly</u>, 127 S.

Ct. at 1964-65.  Additionally, the Court held that the complaint's "factual allegations must be

enough to raise a right to relief above the speculative level."  <u>Id.</u>  The Third Circuit has held that

this language in *Twombly* applies generally to all motions brought under Rule 12(b)(6) and

summed up the *Twombly* standard as follows: "stating . . . a claim requires a complaint with

enough factual matter (taken as true) to suggest the required element.  This does not impose a

probability requirement at the pleading stage, but instead simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of the necessary element."  <u>Phillips</u>,

515, F.3d at 234 (internal quotations and citations omitted).  After *Twombly*, it is still true that

"courts accept all factual allegations as true, construe the complaint in the light most favorable to

the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief."  <u>Id.</u> at 232 (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374

n.7 (3d Cir. 2002)).

## III.    COMPLAINT DEFICIENCIES

All of the Defendants have moved to reform or strike the complaint in this case, either to

remove allegations that do not comply with Rules 8 and 10 of the Federal Rules of Civil

Procedure or requesting a more definite statement.  (<u>See</u> Doc. No. 23 ¶ 13; Doc. No. 26 at 13;

Doc. No. 29 at 15; Doc. No. 40 ¶ 15.)

The Court agrees that the complaint must be amended.  Rule 8 requires that pleadings

contain "a short and plain statement of the claim showing that the pleader is entitled to relief,

Fed. R. Civ. P. 8(a)(2), and further requires that each allegation must be "simple, concise, and

direct," Fed. R. Civ. P. 8(d)(1).  Rule 10 additionally prescribes that "[a] party must state its

claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of

circumstances," and that "if doing so would promote clarity, each claim founded on a separate

transaction or occurrence . . . must be stated in a separate count or defense."  Fed. R Civ. P.

10(b).

      The present complaint does not satisfy Rules 8 and 10.  Most glaringly, Paragraph 1,

included under the title "Introductory Statement," effectively takes up 8 of the complaint's 18

pages.  (Doc. No. 1 ¶ 1 at 1-8.)  The mash of allegations in this introductory statement read more

like a novel than a legal pleading and frequently digress into improper argumentative detail.  See

Burks v. City of Philadelphia, 904 F. Supp. 421, 424 (E.D. Pa. 1995).  This single numbered

paragraph also includes many of the most pertinent allegations against each Defendant, which is

clear from Lease's own briefs citing it repeatedly to set out the procedural and factual history of

the case. (See Doc. No. 33 at 2; Doc. No. 42 at 2-3.)  The use of this meandering "Introductory

Statement" violates Rules 8 and 10 and does not comport with Plaintiffs' obligations, especially

given the multiple defendants and separate transactions that Lease is trying to articulate as the

bases for his relief; the result is a confusing mess that reduces efficiency and will complicate

issues as the case goes forward.  Further, because it seems that several critical allegations are

made in the introductory statement that are not made elsewhere in the complaint, it is not even

possible to simply strike paragraph 1 and rely on other sections of the complaint.  Even if the

Court were to rely on the remainder of the complaint, other portions of the complaint suffer from

the same deficiencies.  (See Doc. No. 1 ¶ 23.)

      Additionally, since the complaint was filed, the Court has issued a memorandum and

order granting summary judgment to the defendants in Lease I.  (Lease I, Doc. No. 82.)  Some of

the allegations and issues in the present case overlap with Lease I, especially with respect to

Defendant Coffey—sued specifically for his role with Kevin Tyler and Douglas Fishel in the

same events taking place on March 17, 2004 that the Court determined did not violate Lease's

constitutional rights—and the plaintiff may be precluded from litigating them again.  Because

the Court's summary judgment order in Lease I was not available when the present complaint

was filed, the Plaintiff should re-assess the viability of the claims and allegations made in this

action to ensure the Court has not already preclusively determined these issues.

As the Court will require Lease to submit an amended complaint, the pending motions to

dismiss will be denied as moot.  The Court will review the claims made against Plank and

Taughinbaugh, see Burks, 904 F. Supp. at 424, however, because they are the subject of a Rule

11 motion for sanctions that must be addressed before proceeding with the litigation to guide

counsel in their future filings in this matter.

## IV.     PLANK AND TAUGHINBAUGH: MOTION TO DISMISS

Though the complaint itself frequently fails to distinguish between Defendants, there

does not appear to be any dispute that the claims against Defendants Plank and Taughinbaugh in

the instant action solely arise from an inspection of Lease's property conducted during discovery

in Lease I.  (See Doc. No. 26 at 2; Doc. No. 33 at 2.)  Lease alleges that this was an "unlawful

search . . . under the guise of discovery (in [Lease I]).  This search was conducted by the

defendants Taughinbaugh and Plank asserting a right to do so pursuant to this court's authority

in the pending case . . . . There was virtually no probable cause, or factual basis for this search

either."  (Doc. No. 1 ¶ 1 at 3.)  Suspecting that Plank and Taughinbaugh had iniquitous motives

during the inspection, Lease's counsel queried them about their purpose for the inspection.  (Id. at 6.)  In response, "[b]oth Mr. Plank . . . and Mr. Taughinbaugh, . . . literally blurted out . . . that the so-called 'view' was about showing that Lease was "stealing electricity from his tenants." (Id.)  Lease contends that this inspection was a fishing expedition "irrelevant to the pending federal action," and that it was undertaken in cooperation with Hamilton Township "to retaliate against him for litigating against Hamilton Township and . . . for filing [Lease I] . . . ."  (Id.) Based on these allegations, Lease asserts claims against Plank and Taughinbaugh for violations of his First and Fourth Amendment rights under 42 U.S.C. § 1983, conspiracy to deprive him of his rights, and abuse of legal process "as a matter of federal and state law."  (Id. at 18.)  It seems Lease also believes that this conduct amounts to defamation, but admits the statute of limitations on those claims has expired.  (Id. at 17.)

The Defendants argue that these claims are frivolous and were advanced in violation of Rule 11 of the Federal Rules of Civil Procedure.  (Doc. No. 27.)  The Court will evaluate each claim in turn.

### A.  42 U.S.C. § 1983

#### 1.  State Action

To make out a prima facie case under § 1983, the plaintiff must demonstrate that a person acting under color of law deprived him of a federal right; the statute itself is not a source of substantive rights.  Marran v. Marran, 376 F.3d 143, 155 (3d Cir. 2004) (citing Berg v. County of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000)).  Initially, there is no indication in the complaint that Defendants were acting under color of state law.[1]  The Court agrees with Plank and

---

[1]  Indeed, in Lease I, the Court determined that Plank was not a state actor when granting summary judgment in his favor.  (See Lease I, Doc. No. 82 at 18.)

Taughinbaugh that neither litigation between private parties nor conducting discovery pursuant to the rules of civil procedure amounts to action under color of law.  (See Doc. No. 26 at 12-13.) Lease seems to concede this point in his brief, arguing instead that the § 1983 claim is appropriate because Plank and Taughinbaugh were acting in a conspiracy with public officials. (Doc. No. 33 at 7.)

A private party can still be liable under § 1983 if he or she willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right.  Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998) (citing Dennis v. Sparks, 449 U.S. 24, 27-28 (1980)). Despite this, mere conclusory allegations of concerted action in the complaint are insufficient to plead the requisite conspiracy.  See id. at 148 (citing Fries v. Helsper, 146 F.3d 452, 458 (7th Cir. 1998) ("[M]ere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss. . . . Nothing in the complaint demonstrates the existence of any joint action, concerted effort, or even a general understanding between Judge Kinney and the defendants.")

Lease contends that "[t]he complaint has sufficiently pled that Plank and Taughinbaugh were working in concert with their attorneys and also with township officials to deny the Plaintiff his constitutional rights."  (Doc. No. 33 at 8.)  The Court disagrees.  There is no question that the complaint is peppered with bald allegations of conspiracy.  For instance, Lease alleges that "the defendants cooperated in efforts to retaliate against him for litigating against Hamilton Township," and "the defendants unlawfully cooperated together . . . to further the unlawful retaliatory interests of Hamilton Township which was to harm or otherwise injure the plaintiff . . . ."  (Doc. No. 1 ¶¶ 1, 19.)  These allegations are conclusory and insufficient to show

7

conspiracy or survive the motion to dismiss.  Lease further contends "[t]his retaliatory behavior is evidenced by all of the defendants' individual unlawful actions."  (Id. ¶ 19.)  The only alleged unlawful action undertaken by Plank and Taughinbaugh is their conduct during the Rule 34 inspection in Lease I, and, even taken as true, the allegations describing that conduct do not show any conspiracy undertaken with Hamilton Township or the other Defendants.  Like in *Fries*, nothing in the complaint can be construed to support a general understanding between Hamilton Township and Plank and Taughinbaugh.  As such, any claims against Plank and Taughinbaugh for conspiracy to violate Lease's rights pursuant to § 1983 are dismissed.

### 2.  Plank and Taughinbaugh's Inspection

Even assuming *arguendo* that Plank and Taughinbaugh could be considered state actors, it is troubling that Lease has asserted claims for constitutional violation at all solely from the inspection of his building pursuant to Rule 34 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> A party may serve on any other party a request within the scope of Rule 26(b) . . . ; to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.        .

Fed. R. Civ. P. 34(a)(2).  Rule 26(b) provides a broad scope for discovery requests: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b).

Here, there is no question that Lease had commenced an action against Plank, which entitled Plank to inspect Lease's property in accordance with the rules of discovery.  It is clear

that Lease consented to the Rule 34 inspection, allowed him onto his property, and was accompanied by his counsel during the inspection.  (See Doc. No. 1 ¶ 1.)  Though Lease refers to him only as a "co-conspirator," Taughinbaugh himself appears to have only been along on the inspection as a non-testifying expert witness to assist Plank.  (Doc. No. 26 at 2.)  Most problematic of all, Lease, though accompanied by counsel who had become "suspicious of the [inspection] of [Plank and Taughinbaugh] as they went beyond the activities of the underlying issues [in Lease I]," (Doc. No. 33 at 2), never stopped the inspection or sought the Court's intervention, available under Rule 37, to limit any improper discovery.  Despite all of this, Lease argues that the inspection violated his First and Fourth Amendment rights.

### a.  Fourth Amendment

The Fourth Amendment protects against unreasonable searches or seizures.  See, e.g., United States v. Sharpe, 470 U.S. 675, 683 (1985).  Lease cites to no authority that suggests an overbroad discovery inspection conducted pursuant to the Rules of Civil Procedure can constitute a violation of the Fourth Amendment.  (See Doc. No. 33 at 5.)  It is clear, even taking the allegations as true, that the Fourth Amendment is not implicated in this case and Plaintiff provides no authority from which the Court might find otherwise.  See United States v. Int'l Bus. Mach. Corp., 83 F.R.D. 97, 101-102 (D.C.N.Y. 1979) ("When a subpoena duces tecum in a civil case is challenged, it would appear the protection sought resides in the Federal Rules of Civil Procedure, not the fourth amendment. . . . *It strains common sense and constitutional analysis to conclude that the fourth amendment was meant to protect against unreasonable discovery demands made by a private litigant in the course of civil litigation*" (emphasis added).)  Further, were it implicated, the inspection in question was conducted pursuant to the rules of civil

procedure, which also provide limitations on the scope and character of civil discovery.  These safeguards help ensure that civil discovery does not run afoul of the Fourth Amendment and provide litigants with tools to protect themselves from overbroad requests.  Rule 34, for instance, only provided Plank with the right to "request . . . to permit entry," and also provided Lease with the ability to object to such a request.  Fed. R. Civ. P. 34.  Accordingly, this inspection was reasonable, especially in light of the fact that Lease and his counsel neither opposed any part of the inspection as it occurred nor sought a protective order from this Court.  The allegation that Plank and Taughinbaugh "literally blurted out with responses that the so-called 'view' was about showing that Lease was 'stealing electricity from his tenants'" does not alter this determination or give Lease license to ignore the recognized discovery safeguards in favor of pursuing new § 1983 claims.

### b.  First Amendment

Lease claims Plank and Taughinbaugh violated his First Amendment rights by retaliating against him for petitioning the government, both in litigating against Hamilton Township to get approval for his subdivision plan and also for pursuing his claims in Lease I.  (Doc. No. 1 ¶ 1 at 7.)  "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."  Thomas v. Independence Tp., 463 F.3d 285, 296 (3d Cir. 2006).  The key inquiry in whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.  Id.

This claim would have the Court assume that an *uncontested* discovery inspection conducted by a defendant—to defend himself against, *inter alia*, an extant First Amendment retaliation claim—can be a viable ground to bring a separate First Amendment retaliation claim and also constitutes sufficient retaliatory action to deter a person from exercising his constitutional rights.  Plank and Taughinbaugh argue that "certainly, the law does not support such an absurd result."  (Doc. No. 26 at 9.)  The Court agrees.  Further, the factual allegations in the complaint do not raise a right to relief above a speculative level on this claim against Plank and Taughinbaugh.  Beyond bald, generalized assertions, the only pertinent allegations concerning the required elements of a First Amendment retaliation claim for Plank and Taughinbaugh involve the discovery inspection and the alleged comment that Lease was stealing electricity.  The Court finds that these allegations are not sufficient to raise a reasonable expectation that discovery will reveal evidence of the required elements of First Amendment retaliation as set out above.

### B.  Abuse of Process

Lease alleges that "the defendants Plank and Taughinbaugh have violated plaintiff's rights under Pennsylvania law i.e. [sic] they have abused legal process both as a matter of federal and state law . . . ."  (Doc. No. 1 at 18.)  In the only other mention of "abuse of process" in the complaint, Lease seems to suggest that there has been an abuse of process because the statute of limitations had run on any potential defamation claim: "Plank and Taughinbaugh have not only defamed the plaintiff, but are further abusing legal process and violating his rights in this regard, both as a matter of federal law and as a matter of state law, the statute of limitations on defamation and false light representation having expired."   (Doc. No. 1 ¶ 38.)

11

Plank and Taughinbaugh did not initiate any legal proceeding against Lease, so this claim must be brought under the Pennsylvania common law tort for abuse of process.  See McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987) ("malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with . . . process after it is issued.")  The abuse of process tort has been described as "the improper use of process after it has been issued, that is, a perversion of it."  General Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 304 (3d Cir. 2003) (quoting McGee, 535 A.2d at 1023).  The word "process" is defined broadly enough to include, *inter alia*, discovery proceedings.  Rosen v. American Bank of Rolla, 627 A.2d 190, 192 (Pa. Super. Ct. 1993).  To establish abuse of process, the plaintiff must show that "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."  Lerner v. Lerner, 954 A.2d 1229, 1237 (Pa. Super. Ct. 2008) (quoting Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)).  There is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.  Rosen, 627 A.2d at 192; see also Shiner, 706 A.2d at 1236 ("[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.")  Finally, while parties who employ legal process primarily intending to burden or cause litigation expense to their adversaries can be liable under this standard, such behavior must "become so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure."  General Refractories, 337 F.3d at 302.  The court should ask whether a legal process has been used "as a tactical weapon to coerce a desired result that is not the

12

legitimate object of the process." <u>Id.</u> at 305.

Based on the alleged conduct discussed above, the Court finds that the factual allegations in the complaint do not raise a right to relief on this claim above the speculative level. The discovery request was seemingly legitimate in itself, as Lease and his counsel consented and never sought a protective order from the Court. The allegations are also insufficient to show that the primary purpose of the discovery inspection was to accomplish a goal for which the discovery process was not designed. Though Lease alleges that his electricity use was not material in Lease I (Doc. No. 1 ¶ 32), the entire dispute arose over damaged electric meters on Lease's property (<u>See</u> Lease I, Doc. No. 6 ¶ 14), and it is far from clear that a Rule 34 inspection to evaluate such matters would have been outside the scope of Rule 26. There are also no other allegations concerning the Defendants that show abusive conduct during the Lease I litigation that would help raise a reasonable expectation that discovery would reveal evidence of this necessary element. In *General Refractories*, for instance, there were allegations that the defendants "intentionally withheld critical documents, ignored court orders, permitted false testimony at depositions and misrepresented facts to opposing counsel and the court." <u>General Refractories</u>, 337 F.3d at 301; <u>see also</u> <u>In re Finney</u>, 184 Fed. Appx. 285, 289-290 (3d Cir. 2006). As discussed above, the allegations in the present complaint fall far short of such conduct, and at most show a violation of civil discovery rules. <u>See</u> <u>Flores v. Emerich & Fike</u>, 416 F. Supp. 2d. 885, 907 (E.D. Cal. 2006) ("[A civil discovery violation,] on its own, does not constitute an abuse of process. Moreover, there were adequate remedies to enforce the discovery rules in the prior case. It is impermissible to sue for prior violations of discovery rules in a subsequent lawsuit."). The claim will be dismissed.

13

## V.  PLANK AND TAUGHINBAUGH: MOTION FOR SANCTIONS

### A.  Rule 11

Along with their motion to dismiss, Plank and Taughinbaugh seek sanctions against

Lease and his counsel, Don Bailey, for filing the complaint in this action.  (Doc. No. 27.)  Plank

and Taughinbaugh argue that Mr. Bailey has violated Rule 11(b)(2) in that the relief sought in

the complaint is not warranted by existing law or the non-frivolous argument for the extension,

modification or reversal of existing law.  (Id. ¶ 7.)

Rule 11 provides in pertinent part:

> (b)  **Representations to the Court**.  By presenting to the court a
> pleading, written motion, or other paper—whether by signing,
> filing, submitting or later advocating it— an attorney or
> unrepresented party certifies that to the best of the person's
> knowledge, information, and belief, formed after an inquiry
> reasonable under the circumstances:
>> (1)  It is not being presented for any improper purpose,
>> such as to harass, cause unnecessary delay, or needlessly
>> increase the cost of litigation;
>> (2)  the claims, defenses, and other legal contentions are
>> warranted by existing law or by a nonfrivolous argument
>> for extending, modifying, or reversing existing law or for
>> establishing new law;
>> (3)  the factual contentions have evidentiary support, or, if
>> specifically so identified, will likely have evidentiary
>> support after a reasonable opportunity for further
>> investigation or discovery; and
>> (4)  the denials of factual contentions are warranted on the
>> evidence or, if specifically so identified, are reasonably
>> based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  It is clear that the central purpose of Rule 11 is to deter baseless filings,

streamline litigation, and curb abuses of the judicial system.  See Cooter & Gell v. Hartmarx

Corp., 496 U.S. 384, 393-394 (1990).  As the rule sets out, the standard for testing an attorney's

conduct is that of what was reasonable under the circumstances, which is defined as an

"objective knowledge or belief at the time of the filing that the claim was well-grounded in law and fact." See Ford Motor Co. v. Summit Motor Products, Inc. 930 F.2d 277, 289 (3d Cir. 1991). "To comply with this standard, counsel must conduct a reasonable investigation of the facts and a normally competent level of legal research to support the presentation." Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir 1994) (quoting Pensiero v. Lingle, 847 F.2d 90, 96 (3d Cir. 1994)).  When assessing an attorney's compliance, the court should consider: "(1) the amount of time available to the signer for conducting relevant factual and legal investigation; (2) the necessity for reliance on a client for underlying factual information; (3) whether the case was referred to the signer by another member of the bar; and (4) the plausibility of the legal position advanced." Pensiero, 847 F.2d at 95.  Bad faith is not required before imposition of sanctions, Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995), and "the Rule does not recognize a 'pure heart and empty head' defense." See In re Cendant Corp. Derivative Action Litigation, 96 F. Supp. 2d. 403 at 405 (citing Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987)).  Rule 11 is intended only for exceptional circumstances, however, and should not be imposed merely because the party failed to prevail on an argument or motion.  Teamsters Local Union No. 430 v. Cement Exp. Inc., 841 F.2d 66, 70 (3d Cir. 1988); Gaiardo, 835 F.2d at 483.  It is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories and the district court should avoid using hindsight to test counsel's conduct at the time the pleading was submitted.  See Gaiardo, 835 F.2d at 484.  The ultimate Rule 11 inquiry is thus "whether at the time he filed the complaint, counsel . . . could reasonably have argued in support of his legal theory." Pensiero, 847 F.2d at 96 (citing Teamsters Local Union, 841 F.2d at 70).

To the extent Plank and Taughinbaugh argue that sanctions should be imposed because

Mr. Bailey filed this separate action against them in contravention of the Court's order in Lease I, (See Doc. No. 31 at 8), that argument must be rejected.  Mr. Bailey's attempt to amend his complaint in Lease I was rejected by this Court, but on grounds of untimeliness and unfair prejudice to Defendants in that action; the Court did not address the issue of whether the amendments were futile.  (See Lease I, Doc. No. 54 at 3.)  Additionally, as discussed above, the Court's ultimate disposition of Lease I was not available to Mr. Bailey when he originally filed the present action or when he submitted briefs in opposition to the pending motions to dismiss.

As partially set out above, there are serious issues with this pleading, however, as it pertains to Plank and Taughinbaugh.[2]  Mr. Bailey has brought claims which arise solely out of a discovery inspection that took place in August 2005.  The Court notes that Mr. Bailey has largely articulated the correct elements and standard for the claims he has brought in his opposition to the motion to dismiss and motion for sanctions.  (See Doc. Nos. 33. 42.)  But, Mr. Bailey pursues frivolous arguments in applying these standards to a civil discovery inspection by Plank and Taughinbaugh.  For instance, Mr. Bailey neither explains why the Fourth Amendment should apply in the context of civil discovery between private parties nor attempts to justify how its violation could justify a separate cause of action.  In fact, he does not even bother to cite a single case in support of such a claim (nor has the Court's own research located any).  Instead, Mr. Bailey relies on unsupported, questionable arguments, claiming that the search was only conducted "under the guise of discovery" and that Plank and Taughinbaugh "had no basis in fact for this filing [sic] expedition beyond an unlawful desire to injure Lease and prevent this litigation from succeeding."  (Doc. No. 33 at 2.)  The Court is unaware that a defendant could

---

[2] Nothing in this discussion should be construed as a determination on the pending claims against the other Defendants in this litigation.

*unlawfully* desire that litigation brought against him not succeed, though Mr. Bailey makes this argument at various points.  He even involves opposing counsel, arguing that Plank and Taughinbaugh "violated his First Amendment rights to petition the government.  They did this through their lawyers as participates [sic] in the litigation."  (Doc. No. 33 at 2.)

Of course, the Court does not suggest that civil discovery is never used for improper purposes.  Mr. Bailey has never contested, however, that Lease consented to the Rule 34 inspection, allowed Plank and Taughinbaugh onto the property, and was even accompanied by Mr. Bailey during the inspection.  (See Doc. No. 1 at 6.)  Further, it is clear from the complaint and record that even though Mr. Bailey claims to have "become suspicious" as the inspection took place, he neither took action to stop the inspection at the time nor properly notified the Court about any perceived discovery abuses.  Under these circumstances the Court must assume the inspection complied with the rules, because Mr. Bailey never even attempted to utilize the Rule 37 method prescribed by the rules to protect litigants from overbroad discovery requests.  From the record of Lease I, it appears the issue was only first raised in the aforementioned motion to amend almost a year after the offending inspection had taken place.  (See Lease I, Doc. No. 44.)  Mr. Bailey's decision to bring completely separate claims against Plank and Taughinbaugh for this dispute—properly resolved by the mechanisms provided for in the discovery rules—is an abuse of the judicial system and is not warranted by existing law.

The Court finds that Mr. Bailey has advanced these claims against Plank and Taughinbaugh without a reasonable inquiry under the circumstances.  The claims are not warranted by existing law or by nonfrivolous argument for extending, modifying, or creating

new law.  As such, Mr. Bailey has violated Rule 11(b).[3]

### B.  Appropriate Sanctions

If Rule 11(b) has been violated, the Court has discretion to tailor a sanction to the particular facts of the case.  <u>Cendant Corp.</u>, 96 F. Supp. 2d. at 407-08.  The Court may impose appropriate sanctions "on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  The court can impose monetary sanctions such as attorney fees or penalties, or non-monetary sanctions, which can include: oral or written reprimands, publication of the sanctioning opinion, referral of the matter to the state bar for disciplinary proceedings, an order barring an attorney from appearing for a period of time, compulsory legal education, or dismissal of baseless claims.  <u>Doering v. Union County Board of Chosen Freeholders</u>, 857 F.2d 191, 194 (3d Cir. 1988) (citing <u>Gaiardo</u>, 835 F.2d at 482)); <u>see also</u> <u>Langer v. Monarch Life Ins. Co.</u>, 966 F.2d 786, 810 (3d Cir. 1992).  But, an appropriate sanction must be limited to the least severe sanction that suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  Fed. R. Civ. P. 11(c)(4); <u>Langer</u>, 966 F.2d at 810.  In assessing the appropriateness of monetary sanctions as opposed to non-monetary sanctions, courts have considered: "(1) the willfulness of counsel's conduct; (2) whether the conduct was part of a pattern; (3) whether counsel engaged in past similar conduct; (4) whether the conduct was intended to injure; (5) what effect the conduct had on the time or expense of litigation; and (6) the type of sanction sufficient to deter a repetition of such

---

[3] Plank and Taughinbaugh also seek sanctions against Plaintiff Lease himself.  (Doc. No. 31 at 10.) Because the Rule 11 violation in this case is primarily based on meritless legal claims and contentions, the Court finds that sanctioning Lease himself is not warranted under the circumstances.  Further, Plank and Taughinbaugh seek monetary sanctions, which cannot be awarded against a represented party for violating Rule 11(b)(2). Fed. R. Civ. P. 11(c)(5)(A).

conduct." Cendant Corp., 96 F. Supp. 2d. at 407-08 (citing Shepherdson v. Nigro, 179 F.R.D.

150, 153 (E.D. Pa. 1998)).  Plank and Taughinbaugh request that the Court order Mr. Bailey to

pay the costs to defend this action, including reasonable attorney fees.

Plank and Taughinbaugh argue with some force that Mr. Bailey brought these claims

against them in bad faith to harass and injure them.  (See Doc. No. 31 at 9.)  Indeed, arguing in

support of amending his Lease I complaint with these new claims, Mr. Bailey spent nearly six

pages (over half of his brief) detailing his frustrations with the defendants' discovery objections

(See Lease I, Doc. No. 45 4-10.)  Despite this, the Court cannot conclude that bringing these

separate claims was a willful violation of Rule 11 or necessarily done with intent to injure.  One

troubling consideration is the many times that Mr. Bailey has already been sanctioned for similar

conduct in this and other courts.  See, e.g., Conklin v. Warrington Township, No. 05-CV-1707,

2006 WL 2246415 (M.D. Pa. 2006); Beam v. Bauer, 383 F.3d 106 (3d Cir. 2004); Beam v.

Downey, 151 Fed. Appx. 142 (3d Cir. 2005).  Failing to utilize the proper discovery procedures

to resolve this dispute has also taken a lot of additional time and effort, both for Plank and

Taughinbaugh and the Court.  Finally, the Court must note the character of the litigation (from

Lease I until now), which seems from the filings to have devolved into fractiousness between

counsel, particularly Mr. Bailey and counsel representing Plank and Taughinbaugh.  See Langer,

966 F.2d at 811-12.

Considering the above, the Court finds that reasonable attorney fees and costs are the

least severe sanctions that suffice to deter repetition of this conduct.  Counsel for Plank and

Taughinbaugh are directed to submit a detailed fee petition with affidavits outlining background,

hourly billing rates, and the time spent in defending the instant complaint and litigating the

motion for sanctions so that the Court can calculate the "lodestar" figure.  <u>See</u> <u>Doering</u>, 857 F.2d at 195.

**VI.     CONCLUSION**

For the foregoing reasons, Plank and Taughinbaugh's motion to dismiss and motion for sanctions will be granted.  The Court will require Plaintiff Lease to amend his complaint to resolve violations of Rule 8 and 10 of the Federal Rules of Civil Procedure, and the remaining motions to dismiss will be denied as moot.  An order consistent with this memorandum will follow.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID R. LEASE,** | : | |
| | : | |
| **Plaintiff** | : | **Civil Action No. 1:07-cv-0003** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **DOUGLAS FISHEL et al.,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, this 3rd day of April 2009, upon consideration of the Defendants' motions

to dismiss (Doc. Nos. 23, 25, 28, 40), Defendant Ron Plank and George A. Taughinbaugh's

motion for sanctions (Doc. No. 27), and Don Bailey's motion to withdraw (Doc. No. 56), and for

the reasons set forth in this Court's Memorandum Opinion filed herewith, **IT IS HEREBY**

**ORDERED THAT**:

1. Defendant Plank and Taughinbaugh's motion to dismiss (Doc. No. 25) and motion for sanctions (Doc. No. 27) are **GRANTED**.

2. Don Bailey's motion to withdraw as counsel for the Plaintiff (Doc. No. 56) is **GRANTED**.

3. Counsel for Defendants Plank and Taughinbaugh shall submit affidavits setting forth each attorney's educational background, work experience, specializations and their current hourly billing rate. These attorneys shall also submit an exhibit detailing the hours expended and work performed in defending the instant complaint and litigating the motion for sanctions. This documentation shall be submitted within twenty (20) days from the date of this order.

4. Plaintiff is permitted to file objections to the hourly rate and hours expended by the Defendants. These objections shall be filed within fifteen (15) days of the filing of Plank and Taughinbaugh's affidavits and exhibits. These objections may be filed by Don Bailey or through substitute counsel now that Mr. Bailey has been granted leave to withdraw as Plaintiff's counsel.

5. Taking into account the Court's disposition of the prior related lawsuit in this

matter and the deficiencies with the present complaint identified in the Court's Memorandum Opinion, Plaintiff shall submit an amended complaint that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure within twenty (20) days from the date of this order.

6.      The Defendants' remaining motions to dismiss (Doc. Nos. 23, 28, 40) are **DENIED AS MOOT**.

> _  S/ Yvette Kane_____
> Yvette Kane, Chief Judge
> United States District Court
> Middle District of Pennsylvania

2