IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID R. LEASE, | : |
| Plaintiff | : Civil Action No. 1:07-CV-0003 |
| v. | : (Chief Judge Kane) |
| DOUGLAS FISHEL et al., | : |
| Defendants | : |

# MEMORANDUM

Before the Court are two Rule 12(b)(6) Motions to Dismiss filed by Defendant Douglas Fishel ("Fishel") (Doc. No. 66), and Defendants Ronald Balutis ("Balutis"), Timothy Beard ("Beard"), and Hamilton Township (Doc. No. 73). The motions are ripe for disposition. For the reasons that follow, the Court will deny Defendant Fishel's motion and grant in part Defendants Balutis, Beard, and Hamilton Township's motion.

## I. BACKGROUND

### A. Factual Background

Plaintiff David R. Lease ("Lease") owns property at 160-170 Gun Club Road in Hamilton Township, Adams County, Pennsylvania. (Doc. No. 65 ¶ 17.) The allegations in this amended complaint arise out of a land development dispute between Defendant Hamilton Township and Lease. (Id. ¶ 8.) Lease pursued this dispute in litigation with Hamilton Township in the Adams County Court of Common Pleas. (Id.) On June 18, 2004, the court granted him summary judgment in the case, which decision was affirmed on appeal. (Id. ¶¶ 8-9.) Lease alleges that the various individual Defendants took retaliatory actions towards him as a result of this successful litigation against Hamilton Township. (Id. ¶12.)

Defendant Balutis was employed as a code enforcement officer for Hamilton Township during the events described in the amended complaint. Defendant Beard was employed as a supervisor in Hamilton Township. On or around May 31, 2006, Balutis entered onto and inspected Lease's property pursuant to authorization from the Adams County Court of Common Pleas to inspect the property and check for "code violations." (Id. ¶ 18.) During his search, it is alleged that Balutis went beyond the scope of the court's authorization by inspecting rafters and the construction of the property. (Id. ¶ 19.) Approximately a week after this search, Balutis returned to the property with Beard, who started measuring the parking lots on the property to check for zoning violations. (Id. ¶ 24.) It is alleged that this inspection into zoning violations went beyond the court's authorization to search for "code violations." (Id. ¶ 24.)

In addition to the above described searches, Lease contends that Balutis engaged in other retaliatory behavior against him after his successful litigation against Hamilton Township. For instance, "Balutis drove slowly by [Lease's] property and wrote things on a clipboard as he passed by." (Id. ¶ 39.) On one such occasion, Balutis made an obscene gesture with his middle finger toward Lease. (Id. ¶ 40.) Balutis also allegedly refused Lease's requests for certain permits with no justifiable basis (Id. ¶ 41), improperly interfered with Lease's purchases of adjoining property (Id. ¶ 42), and stopped Lease from completing projects on his property, physically removing him from his tractor at one point. (Id. ¶¶ 43-46).

Lease also asserts that he was retaliated against by Defendant Fishel, who was employed as a police officer for Hamilton Township during the events described in the amended complaint. (Id. ¶ 42.) Lease alleges that Fishel approached him in a plumbing supply store after successfully pursuing the above-mentioned litigation against Hamilton Township and after

2

initiating follow-up federal litigation in this Court.[1]  (Id. ¶ 53.)  In the heated exchange that followed, Fishel allegedly referred to Lease as a "gold digger."  (Id. ¶ 53.)  Fishel also threatened that he would "get" Lease if he did not withdraw the federal lawsuit in this Court.  (Id. ¶¶ 54-55.)  In another incident, Fishel also allegedly attempted to back over Lease with his vehicle while Lease was pumping gas.  (Id. ¶ 56.)

Finally, Lease alleges that Hamilton Township failed to properly train and supervise its employees "not to retaliate against citizens for seeking a redress of their grievances."  (Id. ¶ 62.)  He also alleges that despite being notified of Beard, Balutis, and Fishel's retaliatory actions, Hamilton Township has failed to punish them or take appropriate actions to prevent further retaliatory acts against Lease.  (Id. ¶ 64.)

### B.  Procedural Background

Lease filed his amended complaint in this action on April 23, 2009.  (Id.)  In his amended complaint, Lease has advanced several claims under 42 U.S.C. § 1983 against the Defendants for violation of his rights under the First and Fourth Amendments.  (Id.)  Lease also brings a claim for civil conspiracy against Balutis and Beard, contending that they conspired to violate these rights by "intentionally taking actions to harass and intimidate [Lease]."  (Id. ¶ 36.)

### C.  Standard of Review

In analyzing a complaint under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether,

---

[1] Lease first pursued federal claims against Hamilton Township and some of these same parties in a case captioned as Lease v. Tyler, at docket number 1:05-CV-00618 ("Lease I").  Before commencing the present action, Lease sought leave to file a second amended complaint in Lease I to include some of the claims presented in the instant action. (Lease I, Doc. No. 44.)  The Court denied this request as untimely (Lease I, Doc. No. 54), and Lease commenced the present case on January 2, 2007.  (Doc. No. 1.)  The Court ultimately granted summary judgment for the Defendants in Lease I on June 30, 2008.  (Lease I, Doc. No. 82.)

under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The plaintiff must provide more than a formulaic recitation of a claim's elements that amounts to mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[C]onclusory or 'bare-bones' allegations will no longer survive a motion to dismiss . . . ." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Accordingly, "to prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler, 548 F.3d at 210.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Harvey v. Plains Tp. Police Dept., 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## II. DEFENDANT FISHEL

In his motion to dismiss, Fishel argues that Lease's claims against him should be dismissed because they were brought after the expiration of the applicable statute of limitations and fail to state a viable claim. (Doc. No. 68 at 3, 5.) The Court will consider these claims in turn.

### A. Statute of Limitations

The Supreme Court has instructed that § 1983 claims are properly characterized as tort actions for the recovery of damages for personal injury, and that federal courts must therefore

borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought. Wilson v. Garcia, 471 U.S. 261, 275-76 (1985). In Wilson, the Supreme Court stated broadly that federal courts must select "the one most appropriate statute of limitations for all § 1983 claims." Id. at 275 (emphasis added). Pennsylvania subjects personal injury actions to a two-year limitations period. 42 Pa. Cons. Stat. Ann. § 5524; see also Kost v. Kozakiewicz, 1 F.3d 176, 189-90 (3d Cir. 1993) (holding that Pennsylvania's two-year statute of limitations applies to claims for violations of constitutional rights brought pursuant to 42 U.S.C. § 1983).

Fishel asserts that the claims in Lease's amended complaint, filed on April 23, 2009, are based on conduct that allegedly occurred in November and December 2006, well before the applicable two-year statute of limitations in Pennsylvania. (Doc. No. 68 at 3.) Though the original complaint in this matter was timely filed on January 2, 2007 (Doc. No. 1), Fishel argues that it did not adequately provide notice of all the allegations raised in the amended complaint. (Doc. No. 68 at 4.) Citing Rule 8 of the Federal Rules of Civil Procedure, Lease argues that "the averments of the original complaint should have put [Fishel] on notice of the claims . . . involving the incident at the store and the incident at the gas pump where Defendant Fishel attempted to intimidate the Plaintiff for exercising his First Amendment rights to pursue a redress of his grievances in court." (Doc. No. 76 at 4.)

Because there was a timely complaint in this matter, the Court must determine whether the claims in the amended complaint properly relate back to the date of the original pleading. Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure provides the applicable framework for the relation-back analysis in this case, where Lease is not attempting to name a new party. Rule

15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). The rationale behind this rule is that "a party is not entitled to the protection of the statute of limitations based upon the later assertion by amendment of a claim or defense that arises out of the same conduct, transaction, or occurrence set forth in the timely filed original pleading." Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004). Amendments that restate a claim brought in the original complaint "with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction, or occurrence in the preceding pleading" should therefore be permitted to relate back. Id. (citing Clipper Exxpress v. Rocky Mt. Motor Tariff Bureau, Inc., 690 F.2d 1240, 1259 n.29 (9th Cir. 1982)). Accordingly, making this determination involves reviewing the two pleadings to search for a common core of operative facts such that "the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds." Id. (citing Michelsen v. Penney, 135 F.2d 409, 416-17 (2d Cir. 1943)).

As discussed by the Court in a prior order, the original complaint in this case was confusing at points and did not comply with the Federal Rules. (Doc. No. 63 at 4.) Despite this, after review of the two pleadings, it is clear that the original complaint provided Fishel with fair notice of the general fact situation and legal theory continued in the amended complaint. Both pleadings clearly set out or attempt to set out a First Amendment retaliation claim against Fishel. (Doc. No. 1 at 18, Doc. No. 65 ¶ 59.) Both of the pleadings also set out similar factual allegations regarding this retaliation claim, such as describing an altercation in a store where

6

Fishel called Lease a "gold digger" and threatened to "get" him. (Doc. No. 1 at 8, Doc. No. 65 ¶¶ 53-54.)

Fishel's attempt to distinguish the two pleadings is unpersuasive. He claims that the only alleged basis for Fishel's retaliation in the original complaint was the Lease I litigation. (Doc. No. 68 at 4.) Lease made clear in the original complaint, however, that the successful state litigation against Hamilton Township was a significant motivator of the Defendants' alleged retaliation and harassment. (Doc. No. 1 ¶ 19.) Fishel also complains that Lease never alleged in the original complaint that Fishel attempted to back over him with a vehicle. (Doc. No. 68 at 4.) While this is correct, the Court finds that this new allegation in the amended complaint merely amplifies the factual circumstances surrounding the pertinent course of conduct between Fishel and Lease. As such, the Court finds the amended complaint satisfies Rule 15(c) and will relate back to the date of the original pleading; Fishel's motion will be denied on this ground.

**B. Failure to State a Claim**

Fishel next argues that Lease has failed to state a proper First Amendment retaliation claim. (Doc. No. 68 at 5.) Fishel contends that the allegations about his statements to Lease are ambiguous or at most show a verbal threat, which does not rise to a constitutional violation as a matter of law. (Id.) Lease argues that Fishel's conduct meets the applicable standard because it was sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights. (Doc. No. 76 at 5.)

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the

7

constitutionally protected conduct and the retaliatory action." Thomas v. Independence Tp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)). The key inquiry in whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. Id.

The Court must reject Fishel's argument that the amended complaint fails to state a claim for First Amendment retaliation. Lease has alleged that Fishel approached him in a plumbing supply store after successfully pursuing the above-mentioned litigation against Hamilton Township and after initiating follow-up federal litigation in this Court. (Id. ¶ 53.) In the heated exchange that followed, Fishel allegedly referred to Lease as a "gold digger." (Id. ¶ 53.) Fishel also threatened that he would "get" Lease if he did not withdraw the federal lawsuit in this Court. (Id. ¶¶ 54-55.) In a subsequent interaction between them, Fishel also allegedly attempted to back over Lease with his vehicle while Lease was pumping gas. (Id. ¶ 56.) The Court finds that these allegations are sufficient to sustain the First Amendment retaliation claim against Fishel at this early stage in the case; Fishel's motion will be denied.

## III. DEFENDANTS BALUTIS, BEARD, AND HAMILTON TOWNSHIP

Defendants Balutis, Beard, and Hamilton Township argue in their motion to dismiss that all the claims brought against them in the amended complaint should be dismissed, or in the alternative, that a more definite statement should be filed. The Court will address their arguments in turn.

### A. Failure to State a Claim

#### 1. Count IV - First Amendment Retaliation

Defendants contend that Lease has failed to state a valid First Amendment retaliation claim against Balutis in Count IV of the amended complaint. (Doc. No. 77 at 15.) They argue that the allegations of harassment and retaliation in the amended complaint are *de minimis* and "constitute[] petty annoyances unlikely to deter a person of ordinary firmness from engaging in protected activity." (Id. at 18.)

As set out above, a plaintiff must allege the following to plead a valid First Amendment retaliation claim: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Tp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)). The key inquiry in whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. Id.

In Count IV, Lease alleges that Balutis, *inter alia*: (1) conspicuously drove past his property and wrote on a clipboard, (2) made an obscene gesture toward Lease, (3) refused requests for permits on his property with no justifiable basis, (4) intentionally interfered with Lease's purchase of property by threatening the seller with meritless citations, and (5) entered onto Lease's property on at least two occasions to force him—one time by physically pulling him off his tractor—to stop work on projects. (Doc. No. 65 ¶¶ 39-46.) The Court finds that this conduct, though individually trivial, is sufficient to state a First Amendment retaliation claim in the aggregate as a campaign of harassment at this early stage of the case. "[A]n entire campaign of harassment which though trivial in detail may have been substantial in gross. It is a question

9

of fact whether the campaign reached the threshold of actionability under section 1983." Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982). Accordingly, Defendants' motion will be denied on this ground.

### 2. Count V - Monell

Defendants argue that Lease's claims against Hamilton Township have not been sufficiently plead to hold the municipality liable under § 1983 for actions of its employees. (Doc. No. 77 at 19-26.) It is well established that municipalities cannot be liable for § 1983 claims under a theory of *respondeat superior*. Monell v. Dept. of Social Servs., 436 U.S. 658, 691-94 (1978). Instead, a municipality can only be liable under § 1983 where the municipality itself in some way causes the constitutional violation at issue. Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004).

Here, Lease essentially alleges that Hamilton Township itself played a part in the alleged First Amendment retaliation by acquiescing to retaliatory actions that violate First Amendment rights and failing to properly train and supervise its employees. (Doc. No. 65 ¶¶ 61-65.) "Where . . . the policy in question concerns a failure to train or supervise municipal employees, liability under § 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Lease has a high burden in pursuing this claim:

> Establishing municipal liability on a failure to train claim under § 1983 is difficult. A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.

10

Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). Accordingly, Lease must show that "through its *deliberate* conduct, the municipality was the moving force behind the injury alleged." Id. (quoting Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 404 (1997)).

Defendants argue that Lease has made only conclusory allegations in the amended complaint that are insufficient to state a valid cause of action against Hamilton Township. (Doc. No. 77 at 26.) The Court must agree. Lease alleges in the amended complaint that Hamilton Township failed to properly train and supervise its employees "by acquiescing to Beard, Balutis, and Fishel retaliating against the Plaintiff for seeking a redress of his grievances." (Doc. No. 65 ¶¶ 63; 65.) He further alleges that though Hamilton Township has been properly notified about Beard, Balutis, and Fishel's retaliatory actions, no action has been taken to prevent continued retaliation. (Id.) Even considering these allegations and the entire amended complaint in a light most favorable to Lease, the allegations are not sufficient to sustain the claim against Hamilton Township. The Court is not satisfied that the amended complaint contains "sufficient factual matter" to show that this claim is facially plausible. These allegations are more in the form of bare-bones legal conclusions that are not sufficient in light of the newly articulated pleading standard in Twombly and Iqbal. For instance, there is no allegation and no inference to be drawn from the allegations that specific training was needed or that the absence of specific training was the moving force behind Lease's First Amendment injuries. Accordingly, the Court will dismiss this claim. Lease will have an opportunity to cure these deficiencies in complying with this Court's order granting Defendants' motion for a more definite statement, discussed below. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (court must generally *sua*

11

*sponte* extend leave to amend dismissed civil rights claims).

### B. Qualified Immunity

Defendants Balutis and Beard generally raise a qualified immunity defense with regard to Lease's First and Fourth Amendment claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S.Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In Saucier v. Katz, the Supreme Court set out a sequential two-step analysis for claims of qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

Id. at 815-16 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)) (internal citations and quotations omitted). The Supreme Court has recently eliminated the requirement that Saucier's two steps be analyzed in sequential order, however:

> On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. [Judges] should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

Id. at 818.

The Fourth Amendment protects against unreasonable searches or seizures.[2] See, e.g., United States v. Sharpe, 470 U.S. 675, 683 (1985). The purpose of the Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Mun.Court of City and County of San Francisco, 387 U.S. 523, 528 (1967). Administrative searches, such as for code and zoning enforcement, can constitute "significant intrusions upon the interests protected by the Fourth Amendment . . . ." Id. at 534. The threshold inquiry for a Fourth Amendment claim is whether the government's conduct amounted to a "search." United States v. Hartwell, 436 F.3d 174, 177 (3d Cir. 2006). "A Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." Kyllo v. United States, 533 U.S. 27, 33 (2001) (citing Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)); see also Hartwell, 436 F.3d at 177, 178 n.4.

Defendants Balutis and Beard argue that Lease's Fourth Amendment claim based on searches allegedly conducted on his property in May 2006 and June 2006 must be dismissed because they are entitled to qualified immunity for these alleged searches. (Doc. No. 77 at 13.) They also seek a more definite statement to assert a more particular qualified immunity defense with regard to Lease's First Amendment retaliation claims. (Id. at 29-30.)

**1. Defendant Beard**

---

[2] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

Lease alleges in his amended complaint that Beard was involved in an inspection of his property in June 2006. (Doc. No. 65 ¶ 20.) After arriving at Lease's property with Balutis, Beard "started measuring the parking lots" and informed Lease that he was looking for zoning violations. (Id. ¶¶ 22-23.) This is the only alleged action that Beard took on Lease's property in the amended complaint.

Considering these allegations, the Court concludes that Beard is entitled to qualified immunity because Lease has failed to allege a Fourth Amendment violation. As this Court held in Lease I, dealing with a similar inspection on the same multiple-dwelling property, there can be no cognizable search from the parking lot on Lease's property:

> While it is true that an individual's Fourth Amendment interest in the curtilage of his home has been well settled for over a century, the concept of curtilage has been significantly modified when applied to a multiple dwelling. Because of the number of residents and guests visiting a multiple-occupancy residence, some courts have reasoned that there is no justified expectation of privacy as to a portion of the home which all residents and visitors must use to enter, the common yard open to the public, or the parking lot open to all users of the apartment building.

Lease v. Tyler, No. 05-CV-618, 2008 WL 2673381, *6 (M.D. Pa. 2008) (internal citations and quotations omitted); see also Estate of Smith v. Marasco, 318 F.3d 497, 519 (3d Cir. 2003) ("Officers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may. According to one scholar, 'when the police come on to private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (*e.g.* walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment.") (quoting Lafave, 1 Search and Seizure: A Treatise on the Fourth

14

Amendment § 2.3(f) (3d ed.)).

Accordingly, Beard did not conduct a search by checking the parking lot on Lease's property; it is clear from the face of the amended complaint that he is entitled to qualified immunity on this claim based on the first part of the Saucier analysis.

### 2. Defendant Balutis

Lease alleges in the amended complaint that Balutis conducted an inspection of his property in May 2006 as part of litigation before the Adams County Court of Common Pleas. (Doc. No. 65 ¶ 17.) The court allegedly authorized the inspection to check for code violations. (Id. ¶ 18.) During this inspection, however, it is alleged that Balutis exceeded the court's authorization, checking "the rafters and construction of the property" in his search. (Id. ¶ 19.)

Balutis does not seem to challenge that these allegations are sufficient at this early stage of the case to show a cognizable search under the Fourth Amendment. He argues instead, under the second part of the Saucier analysis, that the search was admittedly authorized by the Adams County Court on account of pending litigation and therefore Balutis would "reasonably believe [his] presence on the property was lawful . . . ." (Doc. No. 77 at 14.)

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. Accordingly, qualified immunity analysis "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Egolf, 526 F.3d at 110-11 (citing Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005)).

15

Considering the allegations in the amended complaint in the light most favorable to Lease, it is not clear that Lease has failed to state a claim of violation of clearly established law. The nature of the Adams County Court authorization is unclear. The circumstances of Balutis's investigation, including the extent of his search and reasoning for investigating what he did on Lease's property, are also unclear. These items are obviously essential to the Court's evaluation of whether it would have been clear to Balutis that his conduct was unlawful in the situation he confronted.

The lack of clarity on these essential qualified immunity issues is not necessarily fatal to the amended complaint, however. The Third Circuit has held that "the burden of pleading qualified immunity rests with the defendant, not the plaintiff." Thomas v. Independence Tp., 463 F.3d 285, 293-94 (3d Cir. 2006). Accordingly, "a plaintiff has no obligation to plead a violation of a clearly established law in order to avoid dismissal on qualified immunity grounds." Id. In these circumstances, the Court "must avail itself of the procedures available under the Federal Rules to facilitate an early resolution of the qualified immunity issue." Id. at 300. The Third Circuit has specifically endorsed the motion for a more definite statement, id. at 301, which the Defendants have also requested in regards to Lease's First Amendment claims (Doc. No. 77 at 36). Accordingly, the Court will grant the Defendants' motion in the alternative for a more definite statement. Lease shall be required to submit a more definite statement of his First and Fourth Amendment claims, including: (1) more definite allegations concerning the nature and scope of the Adams County Court inspection authorization for Lease's property, (2) more definite allegations concerning the extent and nature of Balutis's May 2006 search of Lease's property, and (3) more definite allegations concerning Balutis's denial of certain permits and

16

interference with Lease's purchase of property.[3]

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant Fishel's motion to dismiss (Doc. No. 66), and grant in part Defendants Balutis, Beard, and Hamilton Township's motion to dismiss (Doc. No. 73). An order consistent with this memorandum will follow.

---

[3] Because resolution of the qualified immunity defenses Defendants Beard and Balutis have raised could eliminate or substantially alter the Court's consideration of Defendants' other arguments attacking the validity of claims in Counts I, II, and III of the amended complaint (Doc. No. 77 at 9-11; 27-28), the Court will reserve ruling on those arguments at this time.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID R. LEASE, : | |
| : | |
| Plaintiff : | Civil Action No. 1:07-CV-0003 |
| : | |
| v. : | (Chief Judge Kane) |
| : | |
| DOUGLAS FISHEL et al., : | |
| : | |
| Defendants : | |

# ORDER

**AND NOW**, this 31st day of March 2010, upon consideration of the Defendants' motions to dismiss (Doc. Nos. 66; 73), and for the reasons set forth in this Court's Memorandum Opinion filed herewith, **IT IS HEREBY ORDERED THAT**:

1. Defendant Douglas Fishel's motion to dismiss (Doc. No. 66) is **DENIED**.

2. Defendants Balutis, Beard, and Hamilton Township's motion to dismiss (Doc. No. 73) is **GRANTED IN PART** as follows:

   a. Plaintiff's § 1983 claim against Defendant Beard for violation of his Fourth Amendment rights asserted in Count I of the amended complaint is **DISMISSED**.

   b. Plaintiff's § 1983 claim against Hamilton Township for failure to train and supervise its employees asserted in Count V of the amended complaint is **DISMISSED**.

   c. Plaintiff shall submit a second amended complaint that, at a minimum, contains a more definite statement of his First and Fourth Amendment claims, including: (1) more definite allegations concerning the nature and scope of the Adams County Court inspection authorization for Lease's property, (2) more definite allegations concerning the extent and nature of Defendant Balutis's May 2006 search of Lease's property, and (3) more definite allegations concerning Defendant Balutis's denial of certain permits and interference with Plaintiff's purchase of property.

   d. The motion is otherwise **DENIED**.

  S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania