**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID LEASE,** | : | **No. 1:07-CV-0003** |
| | : | |
| **Plaintiff,** | : | |
| vs. | : | **(Chief Judge Kane )** |
| | : | |
| **DOUGLAS FISHEL, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

This case now comes before the Court for the purpose of addressing the appropriate measure of attorneys' fees to impose as a sanction for what has previously been found to be the latest failure by plaintiff's counsel to fulfill his professional responsibilities and abide by court-ordered deadlines in civil litigation.[1]

---

[1] On March 31, 2010 the Court entered a Report and Recommendation in this matter addressing this fees issue. Upon reflection, we have now concluded that, pursuant to 28 U.S.C. § 636(b)(1)(A), this court, as a United States Magistrate Judge, is authorized to rule upon post-judgment attorney fee and sanctions disputes like those presented in this case. See, e.g., Merritt v. Int'l. Brotherhood of Boilermakers, 649 F.2d 1013 (5th Cir. 1981); Temple v. WISAP USA in Texas, 152 F.R.D. 591 (D.Neb. 1993). Therefore we are substituting this memorandum opinion and an accompanying order resolving this fee award question for the Report and Recommendation filed on March 31, 2010. We note for the parties that under 28 U.S.C. § 636(b)(1)(A) the parties may seek review of this order by filing a motion to reconsider with the district court since: "A judge of the [district] court may reconsider any . . . matter [decided under this subparagraph] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

These failures, which have been persistent and profound, are particularly regrettable and unfortunate since this sanctions litigation is only the latest episode in a repeated history of sanctions proceedings involving this attorney, sanctions proceedings that have spanned numerous cases over the past fifteen years. Thus, this sanctions litigation compels us to consider and evaluate an unfortunate, regrettable, but immutable fact with respect to this counsel. In terms of professional misconduct, counsel is a repeat offender who has violated court orders and been found to have indulged in professional misconduct on numerous occasions in the past. Lease v. Fishel, No. 07-03, 2009 WL 922486, *8 (M.D.Pa. April 3, 2009). Indeed, the simple, stark reality is that this particular sanctions proceeding constitutes only the latest in a long series of efforts by the federal courts throughout Pennsylvania to try to ensure compliance by plaintiff's counsel with the rules and standards of professional conduct required of all members of the bar. Over the past fifteen years federal district and appellate courts throughout the state have been compelled by the persistent misconduct of counsel to institute numerous sanctions proceedings against him. During this span of years, counsel has been found to have engaged in a staggering array of serious professional misdeeds including: filing inappropriate submissions, presenting unfounded allegations, submitting frivolous and unsupported legal

arguments, vexatious litigation, engaging in unwarranted personal invective and plagiarism.[2]

This case also illustrates another episode of the particularly destructive, corrosive, and unprofessional course which this counsel has chosen to follow when he has been found to have indulged in professional misconduct. In the past, plaintiff's counsel has responded to these judicial efforts at maintaining basic standards of professionalism in an unfortunate and unprofessional manner by leveling groundless accusations against various judges, Beam v. Bauer, 151 F. App'x 142, 144 (3d Cir. 2005)(holding that "Counsel's tirade against [district judge] is unfounded and unprofessional....") , or by filing what were determined to be utterly baseless recusal motions against the presiding judge in the sanctions proceeding. Conklin v.

---

[2]See, e.g., Beam v. Downey, 151 F.App'x 142 (3d Cir. 2005); Beam, v. Bauer, 383 F.3d 106 (3d Cir. 2004); Beam v. Bauer, 88 F.App'x 523 (3d. Cir. 2004); Lease v. Fishel, No. 07-03, 2009 WL 922486 (M.D.Pa. April 3, 2009);Venesevich v. Leonard, No. 07-2118, 2009 WL 36437 (M.D.Pa. Jan. 6, 2009); Venesevich v. Leonard, No. 07-2118, 2008 WL 5340162 (M.D.Pa. Dec. 19, 2008); Conklin v. Warrington Township, No. 05-1707, 2006 WL 2246415 (M.D. Pa. Aug. 4, 2006), aff'd.., 304 F. App'x 115 (3d. Cir. 2008); Cornish v. Goshen, No. 04-232, 2005 WL 5394660 (M.D.Pa. Aug. 1, 2005); Mitchell v. Guzick, No. 3:02-CV-0178, slip op. at 2 n. 1 (M.D.Pa. July 26, 2004); Barshinger v. Buffington, No. 1:03-CV-0506, slip op. at 2 n. 1 (M.D. Pa. June 10, 2004), aff'd, No. 04-2908 (3d Cir. Apr. 28, 2005); Boyer v. Barry, No. 1:03-CV-1368, slip op. at 1 n. 1 (M.D.Pa. Feb. 24, 2004);  Beam v. Bauer, No. 1:02-CV-1797, slip op. at 3 (M.D.Pa. Mar. 25, 2003); Hicks v. Arthur, 891 F.Supp. 213 (E.D. Pa. 1995), aff'd., 91 F.3d 123 (3d. Cir. 1996).

<u>Warrington Township</u>, 476 F.Supp.2d 458 (M.D. Pa. 2007). He has repeated that pattern of misbehavior in this case.

Finally, further compounding the gravity of this situation is the fact that plaintiff's counsel, Donald Bailey, Esq., has repeatedly failed to comply with rudimentary instructions of the court, and has persistently ignored court-ordered deadlines in the course of this litigation focusing on defining the proper measure of attorneys' fees sanctions that should be imposed against Mr. Bailey for past episodes of unprofessional conduct in this case. Thus, in this case we are presented with a tragic and troubling set of circumstances: a lawyer with a fifteen year history of professional misconduct citations; who is potentially facing an award of attorneys' fees as a sanction for his latest episode of professional misconduct; who has neglected to abide by court orders in the course of litigation intended to give counsel an opportunity to justify or explain his prior alleged misconduct; and who has indulged in further misdeeds by leveling baseless and frivolous claims in this proceeding.

## II.   <u>Statement of Facts and of the Case</u>

Some background regarding the extraordinary, repeated, unusual, and grave extent of counsel's longstanding failure to abide by prior court orders is appropriate.

## 1.    Counsel's Misconduct During District Court Litigation

The tortured history of this litigation was detailed by the District Court in a comprehensive opinion detailing the increasingly vexatious conduct of plaintiff's counsel in this matter. Lease v. Fishel, No. 07-03, 2009 WL 922486 (M.D.Pa. April 3, 2009). Briefly, though, the pertinent facts are as follows:

In March, 2005 Attorney Bailey brought a civil rights action on behalf of David Lease against various local officials, and a local electric company. Lease v. Tyler, Civil No. 1:05-CV-618.(Lease I). This complaint alleged that code enforcement actions taken by the defendants were, in fact, merely a guise for a conspiracy to retaliate against the plaintiff for the exercise of his civil rights. (Id.) These code enforcement actions allegedly involved efforts by local officials and utility companies to ascertain whether Lease was obtaining electric utility power without paying for these utility services.

Having commenced this action against the defendants, Lease was now subject to comply with discovery sought by the defendants as part of their defense to this lawsuit. One aspect of this discovery entailed an inspection of Lease's property, a form of discovery specifically authorized by Rule 34 of the Federal Rules of Civil Procedure. Pursuant to Rule 34, in August 2005 the defendants sought, and obtained, permission to inspect Lease's property, an inspection which was conducted in the

presence of Attorney Bailey and Lease, and was undertaken without any effort by Attorney Bailey to seek a proper protective order under Rule 37 or otherwise prevent the inspection.

Ten months after this inspection, in June of 2006 Attorney Bailey moved to amend Lease's complaint to add, *inter alia*, a claim that the defendants violated Lease's Fourth Amendment rights when they conducted the inspection that was specifically authorized by the Federal Rules of Civil Procedure and was permitted by Lease and his counsel. Attorney Bailey advanced this claim, on the eve of the close of discovery and almost a year after the inspection had occurred. Moreover, Attorney Bailey sought to include this new claim, even though the inspection was specifically authorized by the Federal Rules of Civil Procedure and had not been objected to by counsel at the time it occurred.

On September 20, 2006, the District Court denied Attorney Bailey's motion to amend, citing his dilatory presentation of this matter. Ultimately the District Court dismissed this action entirely, granting the defendants summary judgment on the retaliation claims set forth by Attorney Bailey in this complaint.

Having been thus rebuffed by the Court in <u>Lease I</u> in his efforts to convert a routine discovery procedure authorized by the Federal Rules of Civil Procedure into a violation of the Fourth Amendment, Attorney Bailey waited three months before

filing this civil action. <u>Lease v. Fishel</u>, Civil No. 1:07-CV-03 (<u>Lease II</u>). Included among the allegations set forth in this second complaint was the precise claim which the District Court had previously held could not be added to the original complaint in <u>Lease I</u>; namely, a claim that the inspection conducted by defendants Plank and Taughenbaugh in civil discovery in <u>Lease I</u> was actually an unlawful search which violated the Fourth Amendment. Defendants Plank and Taughenbaugh then moved to dismiss this second complaint, including the allegations in the complaint that treated civil discovery processes as tantamount to illegal searches in violation of the Fourth Amendment. The defendants also sought sanctions against Attorney Bailey for bringing this action, which they asserted violated Rule 11 of the Federal Rules of Civil Procedure since it advanced a legal claim that was frivolous and was not warranted by existing law.

On April 3, 2009, the District Court ruled on this motion, granting defendant Plank and Taughenbaugh's motion to dismiss. <u>Lease v. Fishel</u>, No. 07-03, 2009 WL 922486 (M.D.Pa. April 3, 2009). The Court then went on to address the question of whether Attorney Bailey's actions rose to the level of misconduct warranting a sanction. In this regard the Court observed that:

> Mr. Bailey has brought claims which arise solely out of a discovery inspection that took place in August 2005. The Court notes that Mr. Bailey has largely articulated the correct elements and standard for the

claims he has brought in his opposition to the motion to dismiss and motion for sanctions. But, Mr. Bailey pursues frivolous arguments in applying these standards to a civil discovery inspection by Plank and Taughenbaugh. For instance, Mr. Bailey neither explains why the Fourth Amendment should apply in the context of civil discovery between private parties nor attempts to justify how its violation could justify a separate cause of action. In fact, he does not even bother to cite a single case in support of such a claim (nor has the Court's own research located any). Instead, Mr. Bailey relies on unsupported, questionable arguments, claiming that the search was only conducted "under the guise of discovery" and that Plank and Taughenbaugh "had no basis in fact for this filing [sic] expedition beyond an unlawful desire to injure Lease and prevent this litigation from succeeding." The Court is unaware that a defendant could *unlawfully* desire that litigation brought against him not succeed, though Mr. Bailey makes this argument at various points. He even involves opposing counsel, arguing that Plank and Taughenbaugh "violated his First Amendment rights to petition the government. They did this through their lawyers as participates [sic] in the litigation."

Id. at *9.

The District Court then went on to "find[] that Mr. Bailey has advanced these claims against Plank and Taughenbaugh without a reasonable inquiry under the circumstances. The claims are not warranted by existing law or by nonfrivolous argument for extending, modifying, or creating new law. As such, Mr. Bailey has violated Rule 11(b)." Id. at *10.

Having made these findings, the Court then assessed what the appropriate sanction should be for this violation of Rule 11 by Attorney Bailey, noting that when:

Rule 11(b) has been violated, the Court has discretion to tailor a sanction to the particular facts of the case. The Court may impose appropriate sanctions "on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed.R.Civ.P. 11(c)(1). The court can impose monetary sanctions such as attorney fees or penalties, or non-monetary sanctions, which can include: oral or written reprimands, publication of the sanctioning opinion, referral of the matter to the state bar for disciplinary proceedings, an order barring an attorney from appearing for a period of time, compulsory legal education, or dismissal of baseless claims. But, an appropriate sanction must be limited to the least severe sanction that suffices to deter repetition of the conduct or comparable conduct by others similarly situated. Fed.R.Civ.P. 11(c)(4); In assessing the appropriateness of monetary sanctions as opposed to non-monetary sanctions, courts have considered: "(1) the willfulness of counsel's conduct; (2) whether the conduct was part of a pattern; (3) whether counsel engaged in past similar conduct; (4) whether the conduct was intended to injure; (5) what effect the conduct had on the time or expense of litigation; and, (6) the type of sanction sufficient to deter a repetition of such conduct."

Id. at *10.

In this case, upon a consideration of these legal and equitable factors, the Court found "that reasonable attorney fees and costs are the least severe sanctions that suffice to deter repetition of this conduct", id. at *11, and ordered the defendants to file a fees petition detailing the work which they had done defending against this frivolous claim.

## 2. Counsel's Misconduct During Proceedings Before This Court

Upon receipt of these fees petitions, on October 5, 2009, this particular matter was referred to this Court for the purpose of conducting a calculation of attorneys' fees owed by plaintiff's counsel. When the undersigned was appointed to conduct these proceedings in October 2009, plaintiff's counsel raised no objections to this appointment. This Court, in turn, endeavored to provide plaintiff's counsel with every reasonable opportunity to address and explain this latest episode of alleged misconduct in a fashion which could mitigate the potential sanctions confronting counsel. Indeed, we set, and rescheduled at Mr. Bailey's request, no fewer than five deadlines for counsel to address the professional misconduct allegations in this litigation. In a disturbing pattern of non-compliance, counsel allowed all five of these deadlines to lapse without complying with these court orders.

Thus, on October 13, 2009, we entered an order permitting plaintiff's counsel an opportunity to file a supplemental response to the defendants' fees petition by November 2, 2009, and providing for a hearing or argument on this petition, if necessary, on November 30, 2009. (Doc. 87.)[3] We took this step to fully ensure, and

---

[3]Indeed, although he ultimately failed to comply with any hearing schedules set by the Court, initially Mr. Bailey demanded that such a hearing be held. (Doc. 78, p. 4.)

protect, the interests of plaintiff's counsel in this important sanctions and attorneys' fees dispute, and after giving full consideration to Mr. Bailey's request for a hearing.

In response to this October 13 order, granting plaintiff's counsel a further opportunity to address the appropriate sanction following this latest finding of misconduct, plaintiff's counsel made no effort to seek recusal of the Court. Instead, plaintiff's counsel sought an extension of time from the Court, to November 30, 2009, in which to file a supplemental response in this case. (Doc. 88.)

Motivated by a concern for counsel, and an interest in providing counsel a reasonable opportunity to address this grave matter, we granted this request on November 3, 2009, and extended counsel's response deadline to the date which counsel proposed, November 30, 2009. (Doc. 88.). Thus, we set a second deadline for counsel to address these matters, a deadline that Mr. Bailey specifically requested. Once again, counsel did not at this time raise any concerns that might warrant recusal of the Court. Instead, having specifically sought an extension of this deadline in order to attempt to further explain the District Court's finding of professional misconduct at earlier stages of this litigation, counsel inexplicably allowed the deadline he requested to lapse without making a timely filing as required by the Court's November 3 order.

Because we wished to provide counsel with every opportunity to cure this default, we deferred action in this matter on counsel's failure to timely file a supplemental response for approximately 45 days, until January 13, 2010, when we entered an order directing the plaintiff's counsel to show cause on or before January 19, 2010 why he should not be deemed to have waived his right to file a supplemental response to this motion for attorneys' fees. (Doc. 90.) This order represented the third deadline provided to counsel in order to allow him to address these findings that he engaged in prior unprofessional conduct in this litigation.

Counsel failed to meet this third deadline set by the Court.

Instead, on January 19, 2010, counsel filed a motion seeking a one-day extension of this deadline to submit a supplemental response to this motion for attorney's fees. (Doc. 91.) Even though counsel had now failed to meet three deadlines, consistent with our longstanding efforts to afford counsel with every reasonable opportunity to cure these prior, multiple defaults and address this sanctions matter, we granted this motion. (Doc. 92.)

Having requested, and received, this extension of time, plaintiff's counsel then failed to file the response to the fee petition called for by the Court in its January 13, 2010 order. Thus, counsel failed to meet this, the fourth deadline set by the Court for responding to the merits of this fees petition.

Instead, in an action which was consistent with a pattern of past behavior by counsel when confronted by prior sanctions proceedings, see Conklin v. Warrington Township, 476 F.Supp.2d 458 (M.D. Pa. 2007), counsel filed a motion seeking recusal of both this Court and the District Court. (Doc. 93.) This motion is a peculiar document. It bases the recusal request, in part, upon an unsigned and incomplete affidavit; unsupported recitals relating, *inter alia*, to matters which counsel alleges occurred a quarter of a century ago in the 1980's; and vague factual assertions all of which pre-date the October 2009 appointment of the Court to this matter.

The timing of this pleading was also peculiar, coming in the midst of sanctions proceedings, months after the appointment of the Court to these proceedings, an appointment which plaintiff's counsel did not object to when made by the District Court, and on the eve of counsel's fourth failure to abide court-ordered response deadlines in this case.

Presented with these persistent failures by counsel to address the merits of this fee petition, and counsel's belated assertion of this new issue in a peculiar manner, on January 21, 2010, we took steps to prescribe a prompt, orderly and fair process for the resolution of this matter by entering a comprehensive briefing order in this case. (Doc. 95.) In this order we took several steps, steps dictated by counsel's repeated

failure to do the simplest and most fundamental thing required of an attorney– to abide by court-ordered deadlines.

First, given the failure of plaintiff's counsel to comply with the briefing schedules prescribed by this Court in our Orders of October 13, November 3, January 13 and January 20 (Doc. 87, 89, 90, and 92), and to abide by the briefing schedules specifically requested by the plaintiff's counsel in motions filed on October 30 and January 19 (Docs. 88 and 91) we found that the plaintiff's counsel was deemed to have waived the opportunity to file further supplemental submissions in opposition to the outstanding motion for attorney's fees. We also found in light of the failure of plaintiff's counsel to abide by the briefing schedules prescribed by this Court in our Orders of October 13, November 3, January 13 and January 20 (Doc. 87, 89, 90, and 92), and adhere to the briefing schedules specifically requested by the plaintiff's counsel in motions filed on October 30 and January 19 (Docs. 88 and 91) the hearing or argument scheduled in this matter on the fees' petition was also deemed waived by plaintiff's counsel.

With respect to the Motion to Recuse (Doc. 93) that counsel had belatedly filed, we gave counsel an opportunity to address this issue in an appropriate, fair and professional fashion. Specifically, we instructed plaintiff's counsel to do the minimum required of all counsel: We ordered counsel to follow the Court's local

rules governing motions practice in civil matters. In particular, we directed counsel to fully comply with the requirements Local Rule 7.5 by filing a brief in support of his motion on or before February 3, 2010.  We further advised counsel that all briefs must conform to the requirements prescribed by Local Rule 7.8. Moreover, in accordance with Local Rule 7.3, which provides that "[w]hen allegations of fact are relied upon in support of a motion, all pertinent affidavits, transcripts, and other documents must be filed simultaneously with the motion and shall comply with Local Rule 5.1 (f)", the plaintiff's counsel was placed on notice that no other factual submissions would be permitted on this motion without prior leave of court and upon a showing of good cause.

Through this January 21 order we extended to counsel a fifth opportunity in the context of this sanctions proceeding to demonstrate that he could comply with Court orders. Counsel then elected to inexplicably squander this opportunity. Instead of complying with this Court's January 21 order, the latest of five orders setting deadlines in this matter, counsel blithely moved for yet another extension of time in this case on the very date set by the Court for his response, February 3, 2010. (Doc. 96.) This motion, which was filed near the close of court business on February 3, was a summary one-page document which provided no grounds for the relief requested, and no cogent explanation for counsel's latest failure to comply with scheduling

orders, beyond a summary assertion that counsel's "outstanding work-load and additional responsibilities in other matters" prevented him from doing so.

In the context of this case, we found counsel's February 3 excuse for his failure to comply with court orders to be plainly inadequate. In this regard we were compelled to note that nearly one year earlier, counsel was found to have engaged in serious professional misconduct, warranting Rule 11 sanctions. <u>Lease v. Fishel</u>, No. 07-03, 2009 WL 922486 (M.D.Pa. April 3, 2009). This sanctions hearing was the latest episode in a regrettable fifteen-year history of sanctions proceedings involving counsel, proceedings which had resulted in multiple findings of grave misconduct involving filing inappropriate submissions, presenting unfounded allegations, submitting frivolous and unsupported legal arguments, pursuing vexatious litigation, engaging in unwarranted personal invective, and committing plagiarism.[4]

---

[4]See, e.g., <u>Beam v. Downey</u>, 151 F.App'x 142 (3d Cir. 2005); <u>Beam, v. Bauer</u>, 383 F.3d 106 (3d Cir. 2004); <u>Beam v. Bauer</u>, 88 F.App'x 523 (3d. Cir. 2004); <u>Lease v. Fishel</u>, No. 07-03, 2009 WL 922486 (M.D.Pa. April 3, 2009);<u>Venesevich v. Leonard</u>, No. 07-2118, 2009 WL 36437 (M.D.Pa. Jan. 6, 2009); <u>Venesevich v. Leonard</u>, No. 07-2118, 2008 WL 5340162 (M.D.Pa. Dec. 19, 2008); <u>Conklin v. Warrington Township</u>, No. 05-1707, 2006 WL 2246415 (M.D. Pa. Aug. 4, 2006), <u>aff'd</u>.., 304 F. App'x 115 (3d Cir. 2008); <u>Cornish v. Goshen</u>, No. 04-232, 2005 WL 5394660 (M.D.Pa. Aug. 1, 2005); <u>Mitchell v. Guzick</u>, No. 3:02-CV-0178, slip op. at 2 n. 1 (M.D.Pa. July 26, 2004); <u>Barshinger v. Buffington</u>, No. 1:03-CV-0506, slip op. at 2 n. 1 (M.D. Pa. June 10, 2004), <u>aff'd</u>, No. 04-2908 (3d Cir. Apr. 28, 2005); <u>Boyer v. Barry</u>, No. 1:03-CV-1368, slip op. at 1 n. 1 (M.D.Pa. Feb. 24, 2004); <u>Beam v. Bauer</u>, No. 1:02-CV-1797, slip op. at 3 (M.D.Pa. Mar. 25, 2003); <u>Hicks v. Arthur</u>, 891 F.Supp. 213 (E.D. Pa.

Given the months which had elapsed since this Court was appointed to conduct these proceedings, and counsel's failure to abide by five separate filing deadlines during this period, we concluded that further action by the Court was necessary in the form of an order denying counsel any additional extensions of time. In reaching this conclusion we recognized that rulings by a Magistrate Judge on requests for extension of time rest in the sound discretion of the court. Miller v. Ashcroft, 76 F. App'x 457, 461 (3d Cir. 2003). That discretion is guided, however, by certain basic principles. Thus, under this abuse of discretion standard, a trial court's control of its docket will not be disturbed " 'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant' " Id., (citations omitted). Moreover, any party challenging a ruling denying a continuance request, "ha[s] a heavy burden to bear, . . ., as matters of docket control and conduct of [litigation] are committed to the sound discretion of the district court." In re Fine Paper Antitrust Litigation 685 F.2d 810, 817 (3d Cir. 1982)(citations omitted). Furthermore, when exercising this discretion, we acknowledged a basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. See Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice

---

1995), aff'd., 91 F.3d 123 (3d. Cir. 1996).

also requires that the merits of a particular dispute be placed before the court in a timely fashion . . . ." McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d. Cir 1998)(affirming denial of request for extension of time).

Judged against these standards, we concluded that the proper exercise of our broad discretion required denial of this fifth motion for an extension of time in this sanctions litigation. In this regard we found that counsel's terse explanation that his "outstanding work-load and additional responsibilities in other matters" did not allow him to obey this order was clearly an insufficient excuse for this latest failure to comply with a court order in this professional misconduct proceeding.

Indeed, in our view, this bland assertion was an extraordinary admission of the lack of regard which counsel gave to his professional responsibilities. Given the issues raised in this litigation regarding the fitness of counsel, and the cardinal importance of maintaining the highest standards of our profession, there simply could not have been any "additional responsibilities in other matters" which should have taken precedence over meeting these court-ordered deadlines aimed at allowing counsel to justify, mitigate or explain his prior misconduct.

We also concluded that counsel could not make a showing that denying this, his fifth motion for extension of time, would result in actual, unfair prejudice to the complaining litigant, see Miller, 76 F. Appx. at 461, since counsel had been aware of

these proceedings for more than one year, had been given months to respond to these matters, and has ignored five separate filing deadlines.

We further determined that allowing yet another extension and additional delay after setting five deadlines would actually violate the dual mandate which guides this Court and motivates our system of justice: " that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion" McCurdy, 157 F.3d at 197. In our view, granting this request would have unfairly prejudiced the other parties in this litigation, who were entitled to a timely ruling on their fees' petition, and would have further delayed the process of striving to resolve this dispute on its merits. Id.

In short, we concluded that the time had come to address this matter on its merits and to reaffirm the abiding rule that "justice . . . requires that the merits of a particular dispute be placed before the court in a timely fashion." Id. Therefore, we denied this request, and deemed further briefing on this matter by plaintiff's counsel to be closed.

Accordingly, this case is now ripe for resolution.

**III. Discussion**

**A. Recusal of This Court is Not Warranted**

We turn first to Attorney Bailey's motion for recusal, (Doc. 93), since resolution of this motion is a necessary prerequisite to determining whether we may consider the merits of this fee petition. As we have previously noted, sadly, such motions and accusations are becoming an increasingly familiar refrain by this attorney, whose response to past efforts by the courts to ensure appropriate professional conduct on his part has been to file recusal motions against the presiding judge in the sanctions proceeding. Conklin v. Warrington Township, 476 F.Supp.2d 458 (M.D. Pa. 2007)(denying recusal motion). The substance of these motions is also an increasingly familiar, and fanciful theme: complaints that the court is part of a large, amorphous conspiracy. Beam v. Bauer, 151 F. App'x 142, 144 (3d Cir. 2005) (awarding attorneys' fees against Attorney Bailey, who requested investigation of trial judge, and alleged that the district court "set him up", holding that "Counsel's tirade against [district judge] is unfounded and unprofessional....")

The legal standards which govern such recusal requests were aptly defined by Judge Conner in Conklin v. Warrington Township, 476 F.Supp.2d 458 (M.D. Pa. 2007), a case which considered, and rejected, one of Attorney Bailey's prior recusal

motions filed in the midst of a sanctions proceeding. In terms that are equally applicable here, Judge Conner explained that:

> The disqualification standard is set forth in 28 U.S.C. § 455, which provides in pertinent part as follows:
>
> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party....
>
> Id. Pursuant to the above quoted language, the court must consider whether its rulings and statements objectively produce the appearance of bias against Conklin. As explained by the Supreme Court, these provisions "require ... 'bias and prejudice' ... to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." Liteky v. United States, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). This objective standard requires recusal when a "reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir.1987) (citing United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir.1983)); see also In re Antar, 71 F.3d 97, 101 (3d Cir.1995). If the record presents a close question, the court must resolve the issue in favor of disqualification. Nichols v. Alley, 71 F.3d 347, 352 (10th Cir.1995).

Id. at 462-3.

It is clear, however, that a party's disappointment with what the party anticipates may be the court's rulings cannot form the basis for recusal. As Judge Conner observed:

The Third Circuit has repeatedly observed that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990)). Subsections 455(a) and (b)(1) require the source of bias to be extrajudicial, that is stemming from a source outside of the proceeding, or of such an intensity as to make a fair trial impossible. Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253 (3d Cir.1995), cert. denied, 516 U.S. 915, 116 S.Ct. 303, 133 L.Ed.2d 208 (1995). As stated by the Supreme Court:

[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

Liteky, 510 U.S. at 555, 114 S.Ct. 1147 (emphasis in original).

Id. at 463.

Furthermore, in assessing recusal requests, courts must remain mindful that, in the hands of some unscrupulous advocates, a recusal motion may simply be a calculated tactical tool designed to avoid the result which the law dictates in a case. Thus, in every instance:

> [T]he court must consider whether attacks on a judge's impartiality are simply subterfuge to circumvent anticipated adverse rulings. In re Antar, 71 F.3d at 101; Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir.1993). Indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002) (quoting Nichols, 71 F.3d at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); see also United States v. Snyder, 235 F.3d 42, 46 n. 1 (1st Cir.2000); Curley v. St. John's University, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998).

Id. at 463.

In order to ensure that recusal requests do not become last-minute devices used by expedient counsel to attempt to avoid outcomes mandated by law, a recusal motion is "also subject to the requirement that it be 'timely.' See 28 U.S.C. § 144. 'It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.' Apple v. Jewish Hosp. and Medical Ctr., 829 F.2d 326, 333 (2nd Cir.1987). The Third Circuit has described this requirement as one of 'reasonable diligence.' See Furst, 886 F.2d at 581 n. 30." Cooney v. Booth, 262 F.Supp.2d 494, 503-4 (E.D.Pa. 2003), aff'd., 108 F.App'x 739 (3d. Cir. 2004).

Furthermore, where a recusal request, like this request, is premised upon some prior government service by a judge, such as service as United States Attorney, it is clear that the fact of that prior service, standing alone, does not provide grounds for

recusal. Indeed, such a global claim of recusal has long been expressly rejected by the

United States Court of Appeals for the Third Circuit, which  has held that:

> Since a judge's prior position as a United States Attorney does not require his or her recusal unless the case at issue arose before the judge left that position, see Barry v. United States, 528 F.2d 1094 (7th Cir.), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); In re Grand Jury Investigation, 486 F.2d 1013, 1015-16 & n. 3 (3d Cir.1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974), [ a judge's] prior [government] position . . .  could not reasonably be deemed to be a basis to question [the judge's] ability to rule impartially in this case.

Edelstein v. Wilentz 812 F.2d 128, 131 (3d. Cir. 1987).

In addition, it is clear that a party's use of invective toward the court cannot

create recusal grounds since:

> There is a "well established judicial rejection of a rule that would permit a litigant or attorney to disqualify a judge by criticizing him." United States v. Evans, 262 F.Supp.2d 1292, 1296 (D.Utah 2003) (quoting United States v. Helmsley, 760 F.Supp. 338, 342-43 (S.D.N.Y.1991)). In other words, a litigant cannot unilaterally create the grounds for recusal. See In re Mann, 229 F.3d 657, 658-59 (7th Cir.2000) (filing of judicial misconduct charge in reaction to court's decision insufficient ground for disqualification). As [one court] has observed: "A party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify herself because the aspersions, *ex propio vigore,* create a cloud on her impartiality." In re United States, 158 F.3d at 35.

Conklin, 476 F.Supp.2d at 464.

Finally, as our colleague, Judge Conner, noted when addressing one of Attorney Bailey's prior recusal motions lodged in the course of a sanctions proceeding, there are also procedural standards which a party moving for recusal must meet. These standards are prescribed by 28 U.S.C. § 144, which as a procedural matter "mandates recusal '[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party.' Conklin, 476 F.Supp.2d at 463, n. 10.

Thus, a proper, and timely filed, affidavit is a legal prerequisite to a recusal motion, a necessary step to impress upon all parties the gravity of the proceedings. When such an affidavit is timely filed: "it is the responsibility of the district judge against whom an affidavit is filed to assess the legal sufficiency of the affidavit. United States v. Townsend, 478 F.2d 1072, 1073 (3d Cir.1973) (stating that the mere filing of an affidavit 'does not automatically disqualify a judge'). An affidavit is legally sufficient if the facts alleged therein: (1) are material and stated with particularity; (2) would convince a reasonable person that a bias exists; and, (3) evince bias that is personal, as opposed to judicial in nature. United States v. Thompson, 483 F.2d 527, 528 (3d Cir.1973)." Conklin, 476 F.Supp.2d at 463, n. 10. This is a burden which cannot be met through vague and conclusory accusations, or

subjective assertions. Id. citing, Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990) (holding that, to be legally sufficient, an affidavit must contain more than mere conclusory allegations) Cooney v. Booth, 262 F.Supp.2d 494, 502 (E.D.Pa.2003) (holding that opinions and conclusions based upon suspicion conjecture and speculation are legally insufficient to warrant recusal).

Judged against these legal standards, we must decline Attorney Bailey's request that we recuse ourselves from this case.[5]

First, we note that it is apparent from the face of the motion that Mr. Bailey's request is totally untimely. As to this judge, Mr. Bailey grounds his recusal motion in an argument that he had with former Pennsylvania Governor Thornburgh in the mid-1980's relating to a state purchase of trucks. (Doc. 93, ¶ 10.) To the extent that this ancient grudge and dispute now provides a basis for recusal of the court, these grounds of recusal have been known to Mr. Bailey for a quarter of a century. Yet, Mr. Bailey did not raise these recusal grounds when the Court was assigned to this matter in October of 2009, and remained content to have this Court sit in judgment in this

---

[5]We note that Attorney Bailey is also separately seeking the recusal of Chief Judge Kane from this case. We leave an assessment of the substance of Mr. Bailey's complaints regarding the Chief Judge to that Court to consider, while noting that our observations regarding the procedural flaws and untimeliness of this request would seem to apply with equal force to this judge and to Chief Judge Kane.

case for months while the Court granted Mr. Bailey multiple continuances of these proceedings. It was only after the Court concluded that it could accept no further delay in this case and denied continuance requests that Mr. Bailey decided that this decades-old incident compelled recusal of this judge. Thus, on the grounds advanced by Mr. Bailey in his motion, that motion is completely untimely and must be denied. Cooney v. Booth, 262 F.Supp.2d 494, 503-4 (E.D.Pa. 2003), aff'd., 108 F.App'x 739 (3d. Cir. 2004).

In addition, the motion contains "no timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party", as required by 28 U.S.C. § 144. Indeed, the motion contains no affidavit whatsoever relating to this judge, and the documents styled as affidavits pertaining to the Chief Judge plainly are not affidavits. Rather, they are an eccentric collection of unsigned, unsworn, random notes, jottings and drafts, which simply do not meet the procedural requirements of § 144.

Beyond its untimeliness and its procedural flaws, this motion suffers from a greater defect: it is legally and factually bankrupt. In assessing the substance of this recusal motion we must acknowledge at the outset that there is a Joycean quality to this pleading. Like some of the works of the great Irish literary figure, James Joyce, aspects of this pleading are written in a stream-of-consciousness style, one which

presumes that the reader has a unique insight into the thoughts of the writer and can thus give meaning to seemingly unconnected ideas. In the hands of a literary stylist like Joyce, this manner of expression can be challenging; in the hands of counsel it is sometimes incomprehensible.

As to this judge, Attorney Bailey's motion seems to allege, without any further supporting proof, that the Court is tied in some manner to a seamless linear conspiracy, one which spans a quarter century, and began in the mid-1980's when Mr. Bailey, as Auditor General, became embroiled in some sort of dispute with the then-governor of Pennsylvania, Richard Thornburgh, regarding the purchase of trucks (Doc. 93, ¶ 10.) Thus, Attorney Bailey's recusal motion sets this request in the context of what he views as a generation-spanning cabal that began when this judge was a young lawyer in his twenties living and working outside of Pennsylvania.

Denouncing this decades-old truck purchase as a corrupt and Faustian bargain, Mr. Bailey then asserts, without further proof, that the corrupt truck purchase by the state during the mid-1980's in some way tainted both the United States Attorney's office and the FBI. (Id.) In Mr. Bailey's view, the stain of this taint of corruption was both enduring and indelible. Even though this truck purchase apparently occurred years prior to when this judge joined the staff of the United States Attorney's Office, Mr. Bailey seems to posit that the stain of this corruption infected me when I was

hired. According to Mr. Bailey that stain germinated within me for years, until I was appointed as a manager within the United States Attorney's Office, and then subtly colored my conduct for decades. Indeed, in Mr. Bailey's view, even my removal from the United States Attorney's Office and my appointment to the bench in 2009, cannot break the stain of corruption which stems from former Governor Thornburgh's state purchase of a truck in the 1980's that, in Mr. Bailey's words, "couldn't even plow snow uphill." (Doc. 93, ¶ 10.)

In our view, merely reciting Mr. Bailey's recusal theory refutes it as a ground for recusal under an "objective standard [which] requires recusal when a 'reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality.'"Conklin, 476 F.Supp.2d at 463, quoting, Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir.1987).

In truth, Mr. Bailey's motion has the qualities of something imagined, but not real. The cabal he posits is incredible. If real, it would be a scheme which was global in its membership, yet completely clandestine in its activities. Indeed, this alleged scheme would have required thousands of participants, acting in concert for a quarter of a century, with the singular but secret goal of bedeviling Mr. Bailey.

Moreover, although Mr. Bailey implies that this cabal is motivated by partisan political influences, the scheme he describes would have to be bi-partisan in nature,

and would necessarily have been embraced with equal fervor by senior officials in both major political parties during at least four Presidential administrations–George H. W. Bush, William Jefferson Clinton, George W. Bush, and Barack Obama.[6]

Furthermore, Mr. Bailey's theory has one of the other benchmarks of something that it more imagined than real. It cites evidence that contradicts his conspiracy theory as confirming proof of that thesis. For example, Mr. Bailey seems to cite an 18 year old federal prosecution of a former aide to Richard Thornburgh, as proof of some sort of bias in favor of Thornburgh, (Doc. 93, ¶ 11), a proposition that is difficult to understand. See United States v. Barr, 963 F.2d 641 (3d Cir. 1992).[7]

---

[6]Indeed, we estimate that no fewer than six United States Attorneys, five Directors of the Federal Bureau of Investigation, and nine Attorneys General of the United States would have held office in the organizations which Mr. Bailey denounces as corrupt during the twenty-five year life of this alleged scheme.

[7]Mr. Bailey also notes that this judge participated 16 years ago in the federal prosecution of someone who was employed in the Office of Auditor General in the 1980's during Mr. Bailey's tenure as Auditor General of Pennsylvania. United States v. Henry, 29 F.3d 112 (3d. Cir. 1994). This fact does not compel recusal of the court since it is well-settled that "a judge's prior position as a United States Attorney does not require his or her recusal unless the case at issue arose before the judge left that position, see Barry v. United States, 528 F.2d 1094 (7th Cir.), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); In re Grand Jury Investigation, 486 F.2d 1013, 1015-16 & n. 3 (3d Cir.1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974)."Edelstein v. Wilentz 812 F.2d 128, 131 (3d. Cir. 1987). Mr. Bailey was not a party in this 16-year old federal case. He did not represent any party in that case, and that case is totally divorced both temporally and topically from the matter currently before this Court. Therefore, this unrelated, decades-old case in which Mr. Bailey was neither a party, nor

Mindful that "a judge 'has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require'" Conklin, 476 F.Supp.2d at 463, we find that the grounds for recusal posited by Mr. Bailey are untimely, expedient, procedurally flawed, and illegitimate. Therefore, the request for recusal must be denied, and we will turn to the analysis of this fees petition.

**B.     Fee Award Analysis**

As noted, the district court has already concluded that Mr. Bailey violated Rule 11(b) of the Federal Rules of Civil Procedure, and that the imposition of reasonable attorneys fees and costs are warranted as "the least severe sanctions that suffice to deter repetition of this conduct." (Doc. 63, at 19.) With this finding having been made, the matter was referred to the undersigned in order to review the matter and ascertain an appropriate amount of fees and costs in accordance with the Court's findings.

**1.     Legal Standards Governing Attorney's Fee Calculations as Sanctions for Violations of Rule 11**

"The starting point for a determination of attorney's fees, the lodestar calculation, is the product of the number of hours reasonably expended in responding

---

counsel, cannot provide grounds for recusal.

to the frivolous paper times an hourly fee based on the prevailing market rate."
Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d Cir. 1988); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The party seeking fees bears the burden of producing "sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered . . . ." Knight v. Drye, 2009 U.S. Dist. LEXIS 82369 (M.D. Pa. Sept. 10, 2009) (quoting McCutcheon v. America's Servicing Co., 560 F.2d 143, 150 (3d Cir. 1990). See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986) (party seeking fees has the initial burden of presenting evidence that the claimed rates and time expended are reasonable).

In the more familiar setting of fee-shifting awards, the Third Circuit has instructed that determining a reasonable hourly rate generally "is calculated according to the prevailing market rates in the relevant community." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001); see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir. 2005) (in most cases, the relevant market rate is the prevailing rate in the forum of the litigation). A court must not make a finding of reasonableness based on its own "generalized sense" of appropriateness, but instead "must rely on the record." Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir. 2001) (quoting Smith v. City of Phila. Housing

Auth., 107 F.3d 223, 225 (3d Cir. 1997)). Courts are to "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001); Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). The party seeking fees "bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard." Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). The petitioning attorney's usual billing rate is typically a starting point in this calculation, but it is not dispositive. Loughner, 260 F.3d at 180. Although the petitioning party has the burden of demonstrating that the requested hourly rates are reasonable, where the party opposing the asserted rate "has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward." Ridley v. Costco Wholesale Corp., 217 F. App'x 130 (3d Cir. 2007) (quoting Washington, 89 F.3d at 1036)); see also Black Grievance Committee v. Philadelphia Elec. Co., 802 F.2d 648, 652-53 (district court not free to disregard attorney's affidavit regarding reasonableness of hourly rate where the opposing party "filed no

affidavit and offered no testimony contesting the accuracy of [the attorney's] statement with respect to charges by comparable practitioners").

With respect to calculating the number of hours reasonably expended, the court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal citation omitted); see also Dellarciprete, 892 F.2d at 1183 ("The district court should exclude hours that are not reasonably calculated."). In general, hours are not considered to have been reasonably expended "if they are excessive, redundant, or otherwise unnecessary." Id. The court may permissibly deduct hours from the fee award if the attorney inadequately documents the hours claimed. Id.

Once the petitioning party has made the preliminary showing described above, "the resulting product is presumed to be the reasonable fee to which counsel is entitled." Id. The burden then shifts to the party opposing the claimed fees by making specific objections to the proposed fee by way of an affidavit or brief. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). Upon consideration of the opposing party's objections, the court enjoys substantial discretion to adjust the lodestar and ultimate fee downward. Id.

In addition to the traditional lodestar analysis, we note that in the context of Rule 11 sanctions – unlike in the more familiar fee-shifting context where a party is entitled to reasonable attorneys' fees and costs as a prevailing party – the court may only impose a sanction that represents "the minimum that will serve to adequately deter the undesirable behavior" that precipitated the sanction. <u>Doering</u>, 857 F.2d at 194 (citation omitted). We are, of course, mindful that the district court has already concluded that "reasonable attorney fees and costs are the least severe sanctions that suffice to deter repetition of [Mr. Bailey's] conduct." (Doc. 63, at 19.) Accordingly, we are chiefly guided by the governing lodestar analysis in determining an appropriate sanction in this matter.

Nevertheless, we find it both necessary and appropriate to consider the various factors identified in <u>Doering</u> when considering a suitable monetary fee award in this case. Indeed, the Third Circuit has made clear that courts must consider these factors when determining the appropriate amount of attorney's fees to charge the lawyer found to have violated Rule 11. <u>Id.</u> at 195 ("We . . . direct the district courts to consider various mitigating factors in their calculation of the total monetary compensation owed by lawyers who have been found to have violated Rule 11."). The reason for these additional considerations is that fees imposed as a sanction implicate different policies than those that support fee shifting in favor of a prevailing

party.  See Doering, 857 F.2d at 196 ("The policy considerations behind fee awards to prevailing plaintiffs under civil rights statutes, however, are different from the policies underlying sanctions under Rule 11").

One particularly important consideration in determining an appropriate fee charged for Rule 11 violations is the violating party's ability to pay.  Id. at 195. The Third Circuit explained:

> A particularly relevant equitable factor is the sanctioned party's ability to pay.  Obviously, the deterrent effect of an award of attorney's fees depends on the extent of the sanctioned party's resources. But while a monetary sanction, such as attorney's fees, is clearly an acceptable choice of deterrent, courts must be careful not to impose monetary sanctions so great that they are punitive -- or that might even drive the sanctioned party out of practice.

Id. at 195-96 (footnotes omitted).  Other considerations that we are expected to evaluate in assessing an appropriate attorney's fee as a sanction for Rule 11 violations include: (1) the public's interest in encouraging certain types of lawsuits; (2) the sanctioned attorney's history of filing frivolous actions; (3) the defendant's need for compensation; (4) the degree of frivolousness of the action; and, (5) whether the frivolousness indicated that a less sophisticated or expensive response by the defendant was required.  Id. at 197 and n.6.

With these principles and considerations in mind, we turn to the parties'
competing submissions with respect to the fees and costs to be awarded.

## 2.    __Hourly Rate__

Defendants Ronald Plank and George A. Taughenbaugh have requested that
the court enter an award of attorneys' fees in the amount of $17,992.50, and costs in
the amount of $59.87.  (Doc. 64.)  Defendants calculate these fees and costs by
relying upon the billing records from the law firm they retained in this matter, Barley
Snyder LLC, which indicate that three Barley Snyder lawyers spent an aggregate of
90.8 hours on this matter.  (Doc. 64, Ex. A.)  Lead counsel, Sean Summers, Esq.,
billed 76.3 hours to this matter, at a rate of $200 per hour.  (Doc. 64, Exs. A, B.)
Additionally, Ronald H. Pollock, Esq., a partner at Barley Snyder, billed 2.3 hours at
a rate of $250 per hour.  (Doc. 64, Exs. A, C.)  James E. Chiaruttini, Esq., a former
Barley Snyder partner, billed 5.8 hours at a rate of $215 per hour.  (Doc. 64, Exs. A,
D.)  Billing records submitted also reflect that a paralegal identified by the initials
"MFM" billed 6.6 hours at a rate of $130.00 per hour.  (Doc. 64, Ex. A.)  All of the
lawyers whose time is reflected in the billing records appended to Defendants' motion
for attorneys' fees attest to their judgment that the time spent on this matter was
necessary and warranted by the asserted nature and complexity of the action.  (Doc.
64, Exs. B - D.)  Other than attesting to their standard billing rates during the periods

covered in this litigation, counsel for Defendants have not offered any additional evidence to demonstrate that their hourly rates fall within a range that is reasonable within this geographic area for the type of legal work at issue in this action.

For his part, Mr. Bailey expends considerable effort attempting to suggest that the lawyers who represented Defendants lack adequate experience in the area of civil rights litigation, and that their standard billing rates should be reduced as a result. Ignoring the fact that these allegedly under-qualified lawyers managed to secure the dismissal of a frivolous complaint that Mr. Bailey himself drafted, and further persuaded the Court that the complaint was so grossly deficient as to merit the imposition of Rule 11 sanctions, Mr. Bailey nevertheless offers his own opinion that "[a] lower hourly rate of $150 is sufficient in the Middle District of Pennsylvania with the background and knowledge of civil rights cases displayed by these attorneys, who have limited involvement in Federal Court." (Doc. 78, at 5-6.) In keeping with the relative lack of showing made by Defendants' counsel, Mr. Bailey offers nothing other than his own opinion to support his assertion that a $150 hourly rate should apply.

Although the record developed by the parties is somewhat limited, we conclude that a rate of $200 per hour for Mr. Summers's legal services in this matter is

warranted.[8]  As an initial matter, Mr. Summers has been a practicing attorney since 1998, and he served as a prosecutor with the United States Army JAG Corps for six years, during which he tried more than 50 cases to verdict.  (Doc. 64, Ex. B.)  He is a member in good standing with numerous courts, in addition to the Middle District of Pennsylvania, and he represents that he has experience in a wide array of civil matters, including civil rights litigation.  (Id.)  He became a partner in Barley Snyder LLC in 2009, shortly following the period during which he very ably rendered services to Defendants in this litigation.  (Id.) We note that Mr. Summers's hourly rate is in keeping with the rates charged by other civil lawyers who appear before this Court, and his rate is below the rate charged for the legal services of Messrs. Pollock and Chiaruttini, who also rendered services to Defendants in this case.  Notably, Mr. Summers's standard hourly rate has recently increased to $250 per hour, which provides good evidence of the value that the marketplace has set for his services.

Lastly, we cannot help but to note that in an unrelated civil action before this Court in 2009, Mr. Bailey and another lawyer associated with his practice were found to be entitled to hourly rates of $260 and $250, respectively – rates substantially in

---

[8]  In future cases in which Defendants' counsel seeks to recover attorneys' fees, they are encouraged to support their request by submitting affidavits from other lawyers practicing in the relevant area of law within this district in order to assist the Court in more readily determining the prevailing market rates.

excess of those sought by Defendants' counsel, and considerably more than the $150 rate that Mr. Bailey casually suggests would be appropriate. See Diana v. Oliphant, No. 05-2338, 2009 U.S. Dist. LEXIS 68640, *16 (M.D. Pa. Aug. 6, 2009). Indeed, the Court in that case reached its conclusion regarding an appropriate hourly rate, in part, after finding that in other actions involving civil rights claims, lawyers within the Middle District of Pennsylvania have been found entitled to fees in the range of $160 to $300 per hour, depending upon experience. Id. at *16 n.6. In consideration of the foregoing, we conclude that Mr. Summers's requested rate of $200 per hour for the services rendered is reasonable within this forum for this type of litigation.

The above considerations would generally apply to the rates sought by Messrs. Pollock and Chiaruttini as well. However, for the reasons discussed below, given the baseless nature of the action brought against Defendants, and the relatively straightforward claims involved in the case, we conclude that it is not reasonable to charge Mr. Bailey for the services rendered by two partners, in addition to the services that Mr. Summers himself provided.[9] Additionally, although the rates

---

[9] In noting that the claims brought against Defendants Plank and Taughenbaugh were both baseless and relatively simple, we do not mean to suggest that this matter was in any way unimportant to them, or unworthy of zealous advocacy on the part of counsel. The Court recognizes that being haled into federal court is a serious matter of importance and gravity for any defendant, and it is entirely reasonable that these defendants would seek to defend themselves vigorously against plaintiff's frivolous claims. We have little doubt that such

charged by "MFM," the Barley Snyder paralegal who apparently assisted with matters such as proofreading and filing documents, may be reasonable within this district, we find that plaintiffs have failed to satisfy their *prima facie* burden to establish that the rate charged for his or her services are, in fact, reasonable by way of affidavit, or any other evidence tending to justify the rate charged. Accordingly, we are without sufficient basis to find that the rates charged for MFM's services are reasonable. But even if there were a foundation upon which the Court could determine that the rate itself was reasonable, we conclude that it would be inappropriate to charge Mr. Bailey with costs relating to clerical and paraprofessional services that were limited in scope, and which appear to have been in many cases either duplicative or discretionary. Accordingly, we will restrict our lodestar calculation to the services rendered by Mr. Summers, who was the lawyer principally charged with rendering a defense to Defendants Plank and Taughenbaugh.[10]

---

considerations informed the district court's conclusion that Rule 11 sanctions were warranted against Mr. Bailey in an effort to discourage repetition of this sort of abusive litigation, something that he has unfortunately engaged in on several occasions, as we have noted elsewhere in this report.

[10] In finding that fees for Messrs. Pollock and Chiaruttini should not be included and imposed against Mr. Bailey as part of a Rule 11 sanction, we do not mean to devalue the quality of services that these lawyers may have rendered on behalf of their clients, and we recognize that during the periods covered by much of this action, Mr. Summers was an associate with the firm, and likely subject to some degree of supervision by the firm's partners. However, in considering the

### 3. Lodestar Calculation

#### a. The Parties' Competing Viewpoints

As noted, in order to arrive at the lodestar calculation, the Court must determine the amount of time that Mr. Summers reasonably expended in rendering legal services in this case, and multiply that amount against Mr. Summers's rate of $200 per hour.

Mr. Summers asserts that between February 20, 2007, and March 10, 2009, he spent 76.3 hours representing defendants' interests in this case. (Doc. 64, Exs. A, B.) The 76.3 hours generally includes time that Mr. Summers spent conferring with his clients and his colleagues who assisted in the representation; conducting research in support of a motion to dismiss and a motion for sanctions, both of which were successful; reviewing court orders, briefs, and other documents filed in the case; and corresponding with clients and opposing counsel. Mr. Summers has submitted an affidavit in which he attests that the time he spent working on his clients' behalf was reasonably necessary to defend against the claims in this case. (Doc. 64, Ex. B.)

_____

equities of this matter, as we must, we find it would be improper to shift the fees of three lawyers and a paralegal onto Mr. Bailey, where the lion's share of the work was obviously handled by Mr. Summers at a lower hourly rate. The same observation applies to the paraprofessional services that MFM rendered on behalf of Defendants' Plank and Taughenbaugh.

In his brief opposing the fees sought, Mr. Bailey lodges a number of objections to various categories of work performed by counsel. For instance, Mr. Bailey argues that interoffice conferences among the Mr. Summers and his colleagues should be disallowed entirely, though he does not explain why or offer anything in the way of evidence to suggest that these charges were inappropriately billed. Mr. Bailey also argues that counsel's fees charged for reviewing the complaint, and subsequent documents relating to service, should be reduced to two hours, though Mr. Bailey again does not provide anything other than his own opinion regarding a reasonable amount of time for these services, and he does not distinguish between the services rendered among the various professionals at Barley Snyder who billed time for this work.

Mr. Bailey next takes issue with the $6,320 billed for work spent preparing defendants' motion to dismiss, including researching, drafting, and filing. Regarding the time spent on the motion, Mr. Bailey argues that it was unnecessary to have three lawyers and a paralegal billing time to this matter, and he suggests that counsel should have spent not more than three or four hours on the motion.

Turning to the motion that precipitated this fee litigation, Mr. Bailey argues that counsel overbilled for time spent working on a motion for sanctions. Mr. Bailey charges that some of time billed for this is duplicative, and that it was excessive.

Whereas Mr. Bailey claims that counsel charged $4,913 for these services, Mr. Bailey asserts that the motion should have required no more than three to four hours of time. Mr. Bailey also contends that counsel should have needed no more than two hours to prepare defendants' reply briefs in support of both the motion to dismiss and the motion for sanctions, rather than the $2,961.50 that Mr. Bailey calculates was actually claimed.[11]

Finally, Mr. Bailey disputes two other broad categories of charges. The first relates to basic litigation tasks such as preparing a case management plan, review of docketing statements, and analysis of motions, briefs, court orders, and other filings. Mr. Bailey again argues that he should not be required to pay more than three hours of some unspecified attorney's time for these tasks, and he maintains that he should not bear the costs of Barley Snyder's paralegal charges for this work. In addition, Mr. Bailey asserts that he should not have to pay for any charges incurred for communications defendants' counsel had with plaintiff's new counsel, Sheri Coover, Esq., following the district court's findings that sanctions should be imposed, and he argues that charges for travel should be disallowed because there is insufficient explanation as to the reason for these costs.

---

[11] In fact, it does not appear that counsel for defendants filed a reply brief in support of the sanctions motion.

Other than to offer his own opinion about the necessity or reasonableness of certain charges, and to make suggestions for a lesser number of hours for certain tasks, Mr. Bailey does not recommend an appropriate fee, or provide any other calculation under the lodestar analysis, but instead presumably leaves this task to the Court alone. Notably, counsel for defendants Plank and Taughenbaugh declined to submit a reply memorandum to respond to any of Mr. Bailey's arguments and assertions and thus rest on their initial submissions.

### b. Calculation of Fees

At the outset, we note that counsel for defendants Plank and Taughenbaugh appear to have rendered very able services to their clients, and succeeded not only in securing the dismissal of the claims that plaintiff brought without any substantial legal basis, but also in persuading the district court that plaintiff's counsel had violated Rule 11, and that attorney's fees were an appropriate sanction necessary to deter future conduct on Mr. Bailey's part. In short, counsel provided able and vigorous representation of their clients' interests, and performed a further value to the court itself in identifying sanctionable conduct on the part of an attorney who regularly appears in this district, and who had seriously transgressed the standards expected of attorneys practicing here. It bears mention that none of these fees would have been incurred had Mr. Bailey exercised the requisite level of professional

judgment to refrain from filing a frivolous lawsuit against these defendants in the first place.[12]

Mr. Summers contends that he is entitled to payment for the 76.3 hours he spent litigating this case, whereas Mr. Bailey appears to contend that counsel should have billed no more than 17 hours for the services rendered. Our view of the matter lies somewhere between these two positions.

We do find that some of the charges relating to researching and drafting the motions and briefs filed on defendants' behalf may be somewhat excessive given the relative lack of complexity of the issues presented. For instance, Mr. Summers billed approximately 58 hours for researching, drafting, and editing the briefs submitted in support of the motion to dismiss and the motion for sanctions. We have reviewed the claims against Mr. Summers's clients, and we have reviewed the motions and briefs. In consideration of the issues involved, and the work reflected in these briefs, we find that it would not be appropriate to shift these costs entirely to Mr. Bailey, and that the

_____

[12] There is some irony in Mr. Bailey's dismissive assessment of counsel's knowledge and ability to litigate competently civil rights actions before the federal courts. It was Mr. Bailey, an attorney who claims 18 years of practice and "an abundant amount of civil rights experience," (Doc. 74, at 8), who brought this frivolous action based upon fanciful and baseless constitutional theories. In contrast, counsel with perhaps fewer years in experience handling civil rights cases exhibited competence and professionalism in advocating on behalf of his client, and in demonstrating the lack of any legal basis for the claims Mr. Bailey sought to advance.

time spent was excessive given the claims in this case. Instead, in our judgment, 35 hours would be a more reasonable quantity of time necessary to prepare the briefs adequately.[13]

Additionally, we do not find that it would be appropriate to charge Mr. Bailey for preliminary work that Mr. Summers may have rendered in this case before even entering an appearance, and we similarly do not find that it would be reasonable to require Mr. Bailey to pay for all of the time that Mr. Summers spent on this matter after the district court had stayed all matters in the case pursuant to an order entered on September 27, 2007. (Doc. 54.) We thus find that 3.25 hours of Mr. Summers's time should also be excluded from the lodestar calculation.

Lastly, we agree with Mr. Bailey that there appears to be no substantial basis to include counsel's claimed travel charges as part of the sanction in this case, as it is unclear where Mr. Summers was traveling on April 10, 2007, as he has not billed any time to this case on that day. We thus find that defendants have not justified shifting this cost to Mr. Bailey as part of the sanctions calculation.

---

[13] We anticipate that Mr. Bailey will argue that 35 hours is still an excessive figure. However, we have carefully reviewed the complaint filed in this case, and find that the puzzling array of claims and allegations asserted would have required a considerable measure of both focus and effort in order to respond effectively, as Mr. Summers did.

Upon consideration of Mr. Bailey's other objections to the time charged, we find them to be unpersuasive, as they have no foundation other than Mr. Bailey's own opinion, which we have not found to be particularly helpful in assessing the reasonableness of the fees to be charged. We have reviewed the remainder of the billing records, and have found them to be reasonable in both the amount of time spent, and the documentation regarding the services rendered. Additionally, as noted above, we find that the fees charged by Messrs. Pollock and Chiaruttini, and by MFM for paralegal services, should not be included as part of the lodestar calculation, as these fees appear to be largely duplicative of the charges already incurred by Mr. Summers, or were otherwise discretionary, and not properly included as part of this sanction.

In consideration of the foregoing, we arrive at the following lodestar calculation. Discounting 23.05 hours from the time spent preparing the motions and briefs filed in this case, and discounting this figure further by the 3.25 hours Mr. Summers has billed for services rendered prior to entering an appearance or after a stay was imposed, we find that Mr. Summers reasonably spent 50 hours litigating on behalf of defendants Plank and Taughenbaugh, defending successfully against an action that plainly should not have been brought in the first place, and properly pursuing sanctions as a consequence. Having determined that Mr. Summers's hourly

rate of $200 is reasonable, we thus arrive at a lodestar calculation of $10,000 (50 hours x $200/hour).

As we have noted above, the Third Circuit has instructed courts to take into consideration a host of equitable factors when calculating a reasonable attorney's fee to assess a lawyer found to have violated Rule 11. Accordingly, our judgment must not be confined exclusively to a lodestar analysis, but instead will also include an evaluation of the equitable factors that the Third Circuit has identified as relevant to a sanctions determination.

Before doing so, we pause to note once again that Mr. Bailey's persistent refusal to engage meaningfully in this sanctions proceeding has substantially impaired our ability to consider these equitable factors. Mr. Bailey's repeated disregard of this Court's orders, and total disregard for the process we have endeavored to provide, is especially puzzling because the equitable factors we must consider are intended in substantial part to ensure that his interests are adequately protected as part of this sanctions proceeding.

Thus, one of the principal factors that the Third Circuit has instructed courts to consider – the ability of the sanctioned attorney to pay – is clearly intended to guard against the imposition of excessive sanctions in order to ensure that they do not become punitive, but are instead limited to those amounts necessary to deter repetitive

conduct.  <u>Doering</u>, 857 F.2d at 195-96.  Yet, despite being given numerous opportunities to do so, Mr. Bailey has never advised the Court that he is without the means of paying the legal fees claimed by defendants' counsel, or that satisfying the sanction imposed will be particularly deleterious to his practice.  Indeed, Mr. Bailey has completely refused to address this matter at all, despite repeated invitations from the Court to do so.  Given Mr. Bailey's refusal to participate meaningfully in this process, we are constrained to conclude that the lodestar calculation we have reached is within Mr. Bailey's ability to pay.

In addition to Mr. Bailey's ability to pay, the remaining equitable factors we must consider tilt decidedly against Mr. Bailey.  One such consideration, the public's interest in encouraging certain types of lawsuits, does not militate in favor of reducing the lodestar calculation or the ultimate sanction.  <u>Id.</u> at 197 and n.6.  Though there may be a strong interest in ensuring that the federal courts remain accessible to litigants seeking to resolve civil rights claims, there would appear to be little interest in encouraging the clearly frivolous litigation that Mr. Bailey has brought in this case, particularly considering Mr. Bailey's assessment of himself as a highly experienced civil rights attorney.  To the extent that this factor has relevance, we conclude that it does not warrant a further reduction in the fee calculation we have reached, which has already been discounted substantially.

Another factor we must consider is the sanctioned attorney's history of filing frivolous actions. <u>Id.</u> Regrettably, Mr. Bailey indeed has a history of filing baseless lawsuits and persistently disregarding court orders, and his conduct in this regard has inspired a number of judges within this district and elsewhere to impose sanctions against him as a result. Given this unfortunate history, we are compelled to find that the lodestar calculation should not be reduced on account of this factor. Indeed, given Mr. Bailey's frequent appearance at this Court, and his long history of prosecuting civil rights actions on behalf plaintiffs, we find that his seeming unwillingness to adhere to the Court's rules and to the basic requirements of the Federal Rules of Civil Procedure to be particularly troubling.

Other factors for consideration include the defendants' need for compensation, the degree of frivolousness of the action, and whether the frivolousness suggests that a less sophisticated or expensive response was required on the part of defendants. <u>Id.</u> Defendants have not made any showing regarding their need for compensation, and Mr. Bailey similarly has offered nothing to assist the Court on this point; we thus find no basis to reduce the fee award on this ground. Regarding the frivolousness of the action, the district court has already spoken on this point, and decidedly concluded that the matter was so frivolous that it merited imposing attorney's fees as a result.

The last consideration is somewhat related, and we believe that the frivolousness of the complaint did justify a reduction in the fees claimed. As set forth above, we have found that the fees defendants' counsel billed for preparing the motions and briefs seeking dismissal and sanctions may have been somewhat excessive. We have, therefore, concluded that these fees should be disallowed entirely for time spent by two lawyers and one paralegal, and that Mr. Summers's own time be discounted by more than 23 hours. In our view, this constitutes a substantial reduction to the fees claimed, and is consistent with our obligations to evaluate this particular equitable consideration.

In conclusion, we find that $10,000 represents an appropriate fee to be imposed as a sanction in this case, based upon both the lodestar analysis, and in consideration of the equitable factors that the Third Circuit has identified as relevant to calculating attorney's fees imposed as a sanction against a lawyer found in violation of Rule 11.

### IV. <u>Conclusion</u>

In conclusion, we feel compelled to make some final observations. One cannot consider the present circumstances of Attorney Bailey without feeling a profound sense of tragedy. Twenty-five years ago Donald Bailey was a person, a proctor, and a public servant of great promise. He was a man and a lawyer who had sworn to

uphold the law, and who voiced a commitment in his career to search the truth, under the law, for those he served.

Today, a quarter century later, Mr. Bailey has sadly slouched into a parody of the man he once was. He has become that which he once professed to oppose. He is an advocate who ignores the law, and distorts the facts, in pursuit of his own, often incomprehensible, personal agenda. He follows this course to the detriment of his clients, to the dismay of other litigants, and to the dishonor of his profession, a profession built on adherence to the rule of law, and an absolute commitment to the truth.

Moreover, there is yet another terrible cost to Mr. Bailey's hubris. Beyond the discord which he sows for his clients, the dismay that he creates for other litigants, and the dishonor he casts upon himself and his profession through his conduct, Mr. Bailey's penchant for leveling unwarranted charges against our entire system of justice casts undeserved and wholly unwarranted disrepute upon the dedicated men and women who serve our courts, our public and our system of laws.

Yet, Mr. Bailey's current situation also evokes feelings of sorrow and pity: sorrow for what Mr. Bailey could have been, and pity for what he has now become. We cannot discern whether Mr. Bailey's destructive behavior stems from cognitive confusion, cunning calculation, or both. Yet, while the causes of this misconduct

remain elusive, the consequences of these actions are both clear, and clearly harmful, to the people Mr. Bailey represents, to the litigants who are the subject of unjustified and vexatious litigation at his hands, to the profession which he has the honor to serve, and to the institutions of justice which are committed to providing equal justice under law.

So while we feel great pity for Mr. Bailey, we cannot allow those considerations of pity to sway us from the dictates of our duty under the law. Under the law our responsibility is clear, because the wrongfulness of Mr. Bailey's conduct is also clear, and clearly caused unwarranted expense to the opposing parties in this case. However, in taking this action, it is our belief that Mr. Bailey should view this case as an opportunity for reflection, and as a time to renew his commitment to the principles he once embraced. We also believe that Mr. Bailey should try to learn and grow from this experience, and strive to meet the expectations of courts he has the privilege to appear before. Those expectations, which we hope Mr. Bailey can attain, are simply stated in the oath that all members of this bar swear upon their admission to the bar of the Court. It is an oath as old as our nation, and one that is rooted in the ideals of this country and the legal profession. It is an oath to comport himself as an attorney, proctor, and solicitor of this court, "uprightly and according to law." We believe that Mr. Bailey should strive to attain this goal. We hope that he will.

Accordingly, for the foregoing reasons, upon consideration of this Petition for Attorneys' fees, and the responses thereto, IT IS ORDERED that the Petition be GRANTED and attorneys' fees of $10,000 are awarded in this matter. IT IS FURTHER ORDERED that Attorney Donald Bailey shall make payment of these fees to the law firm of Barley-Snyder, LLC, on or before **May 3, 2010.**[14]

*S/Martin C. Carlson*
**United States Magistrate Judge**

---

[14] Pursuant to 28 U.S.C. § 636(b)(1)(A), this court, as a United States Magistrate Judge, is authorized to rule upon post-judgment attorney fee and sanctions disputes like those presented in this case. See, e.g., Merritt v. Int'l. Brotherhood of Boilermakers, 649 F.2d 1013 (5th Cir. 1981); Temple v. WISAP USA in Texas, 152 F.R.D. 591 (D.Neb. 1993). However, we note for the parties that under 28 U.S.C. § 636(b)(1)(A) the parties may seek review of this order by filing a motion to reconsider with the district court since: "A judge of the [district] court may reconsider any . . . matter [decided under the under this subparagraph] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).