IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID R. LEASE, :
    Plaintiff : Civil Action No. 1:07-CV-0003
:
v. : (Chief Judge Kane)
:
DOUGLAS FISHEL, et al., :
    Defendants :

## MEMORANDUM

Pending before the Court is a motion to dismiss Counts I, II, and III of Plaintiff's second amended complaint, filed by Defendants Ronald Balutis and Timothy Beard. (Doc. No. 112.) The motion is ripe for disposition. For the reasons that follow, the Court will deny Defendants' motion.

## I. BACKGROUND

### A. Factual Background

Plaintiff David R. Lease owns property at 160 Gun Club Road in Hamilton Township, Adams County, Pennsylvania. (Doc. No. 109 ¶¶ 1, 16.) The allegations in this second amended complaint arise out of a land development dispute between Defendant Hamilton Township and Plaintiff, which resulted in litigation in the Adams County Court of Common Pleas. (Id.) On June 18, 2004, the state court granted Plaintiff summary judgment in the case, and the decision was affirmed on appeal on October 28, 2005. (Id. ¶¶ 8-9.) Plaintiff alleges that Defendants took retaliatory actions towards him as a result of this successful litigation against Hamilton Township. (Id. ¶11.)

On August 14, 2006, Plaintiff entered into an agreement with Hamilton Township to settle other litigation that was pending before the Adams County Court of Common Pleas

1

pertaining to allegations of code violations on Plaintiff's property at 160 Gun Club Road. (Id. ¶ 14.) This agreement was incorporated into a court order[1] ("the March 14, 2006 Order") issued by the Adams County Court of Common Pleas on March 14, 2006. (Id. ¶ 15.) The March 14, 2006 Order states, in pertinent part:

> Within 30 days of this date, the parties shall conduct a walk-through of the front building on 160 Gun Club Road. Township representatives, Mr. Lease, and/or his representative and a representative of Labor and Industry are authorized parties to participate in that walk-through.
>
> The purpose of the walk-through is to determine if there are any ordinance or code violations. If any such violations are determined, the township shall provide or shall issue citations to Mr. Lease and he shall be provided 60 days after service of those citations with an opportunity to remedy the alleged violation.
>
> In order to insure compliance with all ordinances and codes that are applicable to the front building, the township shall be then subsequently provided with access to that building no more than one time every six months.

(Doc. No. 113-1.)

On May 31, 2006, Defendant Balutis arrived at 160 Gun Club Road for the purpose of inspecting it for ordinance and code violations. (Doc. No. 109 ¶ 19.) Plaintiff alleges that Defendant Balutis went beyond the scope of the March 14, 2006 Order by inspecting the rafters and the construction of the property, and by demanding entry to tenants' properties, even if tenants were not home. (Id. ¶¶ 21, 22.) Approximately one week after this search, Defendants Balutis and Beard returned to Plaintiff's property. (Id. ¶ 23.) Defendant Beard began measuring

---

[1] Though not attached to the complaint, the Court may consider the March 14, 2006 Order attached to the Defendants' motion to dismiss because its authenticity is not disputed and Plaintiff's claims are partly based on the document. See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

the parking lot on Plaintiff's property to check for zoning violations. (Id. ¶¶ 23, 25-26.) Plaintiff alleges that this action was unauthorized by the March 14, 2006 Order. Plaintiff also avers that, based on Defendants' allegations, Hamilton Township filed a petition against Plaintiff with the Adams County Court of Common Pleas for zoning violations. (Id. ¶ 28.) That petition was later dismissed. (Id. ¶ 29.)

## B. Procedural Background

Plaintiff filed an amended complaint in this action on April 23, 2009. (Doc. No. 65.) On March 31, 2010, the Court dismissed Plaintiff's Fourth Amendment claim against Defendant Beard and ordered Plaintiff to submit a second amended complaint containing, at a minimum, a more definite statement of his First and Fourth Amendment claims. (Doc. No. 104.) Plaintiff filed a second amended complaint on April 14, 2010. (Doc. No. 109.) Plaintiff's second amended complaint continues to assert claims under 42 U.S.C. § 1983 against Defendants Balutis and Beard for violations of his First and Fourth Amendment rights. Plaintiff also brings a claim for civil conspiracy against Defendants Balutis and Beard, contending that they conspired to violate his rights by "intentionally taking actions to harass and intimidate the Plaintiff." (Id. ¶ 40.)

## II. STANDARD OF REVIEW

In analyzing a complaint under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The plaintiff must provide more than a formulaic

recitation of a claim's elements that amounts to mere labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[C]onclusory or 'bare-bones' allegations will no longer survive a motion to dismiss . . . ." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Accordingly, "to prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler, 548 F.3d at 210.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Harvey v. Plains Twp. Police Dept., 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III. DISCUSSION

Defendants argue that Counts I, II and III of Plaintiff's second amended complaint should be dismissed. The Court will address each count in turn.

### A. Count I - Fourth Amendment

This Court's order of March 31, 2010 dismissed Plaintiff's Fourth Amendment claims against Defendant Beard. (Doc. No. 104.) Plaintiff maintains that Defendant Balutis's May 31, 2006 search of the property exceeded the scope authorized by the March 14, 2006 Order and violated his Fourth Amendment rights. Defendant Balutis argues that he is entitled to qualified immunity on Plaintiff's Fourth Amendment claim. (Doc. No. 113 at 16.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

4

rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity analysis "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Egolf v. Witmer, 526 F.3d 104, 110-11 (3d Cir. 2008) (citing Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005)). In Saucier v. Katz, the Supreme Court set out a two-step analysis for claims of qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

Pearson, 129 S. Ct. at 815-16 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)) (internal citations and quotations omitted). The Supreme Court has recently eliminated the requirement that Saucier's two steps be analyzed in sequential order, explaining:

> On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. [Judges] should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

Id. at 818.

Defendant Balutis argues that Plaintiff has failed to assert a violation of the Fourth Amendment. (Doc. No. 113 at 10.) Additionally, Defendant Balutis asserts that under the second part of the Saucier analysis, the search was authorized by the March 14, 2006 Order and therefore he "reasonably believe[d] [his] presence on the property was lawful." (Doc. No. 113 at 16.)

5

The Court must reject Defendant Balutis's argument that the amended complaint fails to state a valid Fourth Amendment claim. The Court finds that, construing the complaint in a light most favorable to Plaintiff, Plaintiff's allegations are sufficient to sustain the Fourth Amendment claim against Defendant Balutis at this early stage in the case. The Fourth Amendment protects against unreasonable searches or seizures.[2] See, e.g., United States v. Sharpe, 470 U.S. 675, 683 (1985). In order to state a Fourth Amendment claim for unreasonable search and seizure, Plaintiff must show that Defendant Balutis's actions 1) constituted a search or seizure within the meaning of the Fourth Amendment, and 2) were unreasonable in light of the surrounding circumstances. See Brower v. Cnty. of Inyo, 489 U.S. 593, 595-600 (1989). What is "reasonable" depends upon all of the circumstances surrounding the search and the nature of the search itself. United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985) (citations omitted).

Defendant Balutis does not appear to challenge that his actions on May 31, 2006, constitute a search within the meaning of the Fourth Amendment. Instead, Defendant Balutis argues that his actions were in accordance with the March 14, 2006 Order and therefore were not unreasonable. (Doc. No. 113 at 11, 12.) Plaintiff admits that the March 14, 2006 Order authorized Defendant Balutis "to look for ordinance and code violations "on the property. (Doc.

---

[2] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

No. 109 ¶ 20.) However, Plaintiff argues that Defendant Balutis exceeded the scope of the March 14, 2006 Order when he "inspected the rafters and construction of the property, including measuring the height and width of the building, hallways and porches with a tape measure, although the construction of the property had already been approved by the Pennsylvania Department of Labor and Industry and [P]laintiff had a usage permit issued to him by the Department of Labor and Industry for that building." (Doc. No. 109 ¶ 21.) Plaintiff also avers that Defendant Balutis exceeded the scope of the March 14, 2006 Order when he "demanded entry to the tenant's properties, although some of the tenants were not home at the time." (Id. ¶ 22.) The Court recognizes that the language of the March 14, 2006 Order appears to authorize Defendant Balutis to "insure compliance with all ordinances and codes that are applicable to the front building." (Doc. No. 113-1 at 2 (emphasis added).) However, the scope of the access Plaintiff was required to provide to Defendant Balutis remains unclear. Based on these allegations, Court cannot at this time conclude that Defendant Balutis's actions were reasonable in light of the surrounding circumstances. Therefore, Plaintiff has satisfied the first step of the Saucier analysis.

The Court must next determine whether the right at issue was clearly established at the time of Defendant Balutis's alleged misconduct. Pearson, 129 S. Ct. at 815-16. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. Further, "the burden of pleading qualified immunity rests with the defendant,

7

not the plaintiff." Thomas v. Independence Twp., 463 F.3d 285, 293-94 (3d Cir. 2006). Thus, "a plaintiff has no obligation to plead a violation of a clearly established law in order to avoid dismissal on qualified immunity grounds." Id. at 300. The Court finds that Defendant Balutis has not met his burden. Defendant Balutis argues only that, in light of the March 14, 2006 Order, a township official would reasonably believe his presence was lawful. (Doc. No. 113 at 16.) While it may be true that a reasonable official would believe his presence on Plaintiff's property was lawful according to the March 14, 2006 Order, the Court is not convinced that it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted. As noted above, the scope of the access Plaintiff was to provide to the township is unclear from the face of the March 14, 2006 Order. Construing the allegations in the amended complaint in the light most favorable to Plaintiff, it is not clear that Defendant Balutis is entitled to qualified immunity at this time. Accordingly, the Court will deny Defendants' motion to dismiss Count I of Plaintiff's second amended complaint on the basis of qualified immunity.

### B. Count II - First Amendment

#### 1. Failure to State a Claim

Defendants contend that Plaintiff has failed to state a valid First Amendment retaliation claim against them in Count II of the second amended complaint. (Doc. No. 113 at 14.) Plaintiff claims that "the actions by Defendants Balutis and Beard were intended to retaliate and punish the Plaintiff for pursuing a redress of his grievances in the Adams County Court of Common Pleas." (Doc. No. 109 ¶ 34.) According to Plaintiff, Defendants "conduct[ed] a search of the Plaintiff's property as an act of retaliation against the Plaintiff for seeking a redress of his grievance in court." (Id. ¶ 36.) Plaintiff also asserts that "Defendants Balutis and Beard caused

8

Hamilton Township to seek to have a fine imposed by the Adams County Court of Common Pleas" for zoning violations. (Id. ¶ 37.) Plaintiff claims that he was not responsible for these violations. (Id.) On or around November 17, 2006, Judge Kuhn of the Adams County Court of Common Pleas dismissed Hamilton Township's petition against Plaintiff for zoning violations. (Id. ¶ 29.)

In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: "(1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas, 463 F.3d at 296 (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)). The Court finds that Plaintiff has sufficiently asserted a First Amendment retaliation claim. First, Plaintiff does properly allege a constitutionally protected right – the right to seek a redress of his grievances in court. See, e.g., BE & K Constr. Co. v. NLRB, 536 U.S. 516, 525 (2002) ("[T]he right of access to the courts is but one aspect of the right of petition.") (internal quotations omitted). To meet the second prong, the effect of the alleged conduct "need not be great . . . but it must be more than de minimis." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (citations omitted). The Court notes that "warranted citations are not only insufficient to be retaliatory, but are deemed beneficial to keep property from becoming 'blighted' and to keep the community safe." Mann v. Brenner, 2008 WL 4491950, at *5 (M.D. Pa. Sept. 30, 2008). However, Plaintiff has sufficiently pleaded that the zoning violations filed against him by Hamilton Township were based on allegations by Defendants, and that these alleged violations were unwarranted. (Doc. No. 109 ¶¶ 29, 37.) Accordingly, the Court finds that the effect of the alleged retaliatory conduct is substantial

9

enough to be more than de minimis.

Finally, Plaintiff sufficiently alleges a causal connection between his success on appeal of a decision of the Adams County Court of Common Pleas in 2005 and the retaliatory actions taken by Defendants in 2006. To establish a causal connection, Plaintiff "must prove either (1) an usually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). The Third Circuit has held that two days between a protected activity and an adverse action is "unusually suggestive" of retaliatory motive, but that three months is not. See Krouse v. Am. Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997); LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007). Accordingly, the temporal proximity between the protected activity and the allegedly retaliatory action is not unusually suggestive here. However, viewing the evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged a pattern of antagonism coupled with timing to establish a causal link under Twombly. (Doc. No. 109 ¶¶ 25-29, 37.) Because the Court finds that these allegations are sufficient to sustain a First Amendment retaliation claim against Defendants at this early stage in the case, Defendants' motion to dismiss for failure to state a claim of retaliation under the First Amendment is denied.

### 2. Qualified Immunity

Defendants argue that they are entitled to qualified immunity on Plaintiff's claim of retaliation under the First Amendment in Count II. (Doc. No. 113 at 14.) The Court has already determined that Plaintiff sufficiently alleges a First Amendment retaliation claim in Count II, therefore satisfying the first part of the Saucier analysis. Accordingly, the Court must decide

10

whether the right at issue was clearly established at the time of Defendants' alleged misconduct. Pearson, 129 S. Ct. at 815-16. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. Defendants' sole argument on this point is that their presence on Plaintiff's property at the time that Defendant Beard measured Plaintiff's parking lot was authorized by the March 14, 2006 Order. (Doc. No. 113 at 16.) Thus, according to Defendants, they reasonably believed that their presence on Plaintiff's property was lawful. (Id.) However, the March 14, 2006 Order authorizes Hamilton Township representatives to conduct a "walk-through of the front building" on Plaintiff's property within 30 days. Further, the March 14, 2006 Order states that the Township "shall be provided access to [the front building] no more than one time every six months." (Doc. No. 113-1 at 2.) Because Defendant Balutis was provided entry to the front building only a week before he returned to Plaintiff's property with Defendant Beard, the Court is not convinced that Defendants were acting pursuant to the March 14, 2006 Order on their visit to Plaintiff's property in June 2006.

The Third Circuit has held that the qualified immunity analysis in the context of a First Amendment retaliation claim turns on "whether [the] officials reasonably could believe that their motivations were proper even when their motivations were in fact retaliatory." Larsen v. Senate Comm. of Pa., 154 F.3d 82, 94 (3d Cir. 1998). This analysis requires "factual determinations as to the officials' subjective beliefs and motivations, and thus cannot properly be resolved on the face of the pleadings." Id. at 94-95. The only exception is if the Court determines that "the

11

legitimate basis for the action [is] so apparent that the plaintiff's allegations of retaliatory motive could not alter the conclusion that . . . the defendants would have been compelled to reach the same decision even without regard for the protected First Amendment activity." Id. at 95. According to Plaintiff's allegations, which the Court must accept as true for purposes of a motion to dismiss, the true motive of Defendants' actions in measuring Plaintiffs' parking lot and causing Hamilton Township to seek a fine against Plaintiff for zoning violations was in retaliation for his success on appeal of other litigation against Hamilton Township. (Doc. No. 109 ¶ 11.) Defendants have not undisputedly demonstrated that their motives were fair. See Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 857 (E.D. Pa. 2000) (holding that, while "a bare allegation of retaliatory motive is not necessarily sufficient to defeat an assertion of qualified immunity as to a retaliation claim," where the defendants had not "undisputedly demonstrated that their motivations were fair" there was no qualified immunity). It is not clear from the face of the pleadings that Defendants had a legitimate basis for their conduct. Accordingly, Defendants are not entitled to qualified immunity as to Plaintiff's First Amendment retaliation claim at this preliminary stage of the litigation. Thus, the Court will deny Defendants' motion to dismiss Count II of Plaintiff's second amended complaint on the basis of qualified immunity.

### C. Conspiracy

Count III of Plaintiff's second amended complaint asserts a claim for civil conspiracy against Defendants pursuant to 42 U.S.C. § 1983. (Doc. No. 109 ¶¶ 2, 39-41.) To state a claim of conspiracy under § 1983, Plaintiff must allege both an underlying civil rights violation and a conspiracy involving state action. Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 127 F.3d 238, 254 (3d Cir. 1999). While Plaintiff's claims under the Fourth Amendment are dismissed, the

Court finds that Plaintiff has sufficiently alleged violations of his First Amendment rights. Additionally, Plaintiff has shown that Defendants acted under color of state law on behalf of Hamilton Township. (Doc. No. 109 ¶¶ 24, 35.) To sufficiently allege the second factor, conspiracy, the complaint must present facts tending to show agreement and concerted action to deprive Plaintiff of his rights. Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008). Defendants argue that "there are no facts pled to identify the nature of the conspiracy, the overt action taken to achieve the conspiracy, or the period in which the conspiracy allegedly occurred." (Doc. No. 113 at 18.) While Count III itself merely asserts that "Defendants Balutis and Beard intentionally engaged in a conspiracy to violate Plaintiff's constitutional rights by intentionally taking actions to harass and intimidate [Plaintiff]," it also incorporates paragraphs 1-38 of the complaint. (Doc. No. 109 ¶¶ 39-40.) The Court finds that Plaintiff sufficiently alleges a conspiracy in the complaint's preceding paragraphs. Plaintiff avers that Defendant Balutis returned to his property with Defendant Beard in June 2006, at which time Defendant Beard measured the parking lot on Plaintiff's property for zoning violations. (Id. ¶¶ 23-26.) Plaintiff further alleges that Defendants "caused Hamilton Township to seek to have a fine imposed by the Adams County Court of Common Pleas . . . ." (Id. ¶ 37.) Accordingly, Plaintiff's complaint sufficiently alleges agreement and concerted action by Defendants to deprive him of his constitutional rights. Because the Court finds that Plaintiff has asserted factual allegations sufficient enough to raise a right to relief above the speculative level under Twombly, Defendants' motion to dismiss Count III of Plaintiff's second amended complaint is denied.

IV. **CONCLUSION**

For the foregoing reasons, the Court will deny Defendants Balutis and Beard's motion to dismiss. (Doc. No. 112.) An order consistent with this memorandum will follow.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID R. LEASE,** | : | |
| | : | **Civil Action No. 1:07-CV-0003** |
| **Plaintiff** | : | **(Chief Judge Kane)** |
| | : | |
| v. | : | |
| | : | |
| **DOUGLAS FISHEL, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

**NOW**, this 28th day of January 2010, upon consideration of Defendants' motion to dismiss (Doc. No. 112), and for the reasons set forth in this Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT** the motion is **DENIED**.

                                                    S/ Yvette Kane
                                                    Yvette Kane, Chief Judge
                                                    United States District Court
                                                    Middle District of Pennsylvania