IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID R. LEASE, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RONALD BALUTIS, et al. | : | No. 07-00003 |
| Defendants | : | |

M E M O R A N D U M

**Stengel, J.**                                                                    **March 6, 2012**

     This is a 42 U.S.C. § 1983 action arising from a number of land use-related disputes between Hamilton Township, the township's Code and Zoning Enforcement Officer, Ronald Balutis, and Plaintiff, David Lease. Plaintiff alleges that defendant violated his First and Fourteenth Amendment Rights by participating in searches of his property and initiating enforcement actions against him. For the reason set forth below, I will grant the defendant's motion for summary judgment.

**I.**     **Background**[1]

     Plaintiff, David Lease, resides at 160 Gun Club Road, Hamilton Township, Adams County, Pennsylvania and is a resident of Hamilton Township, Adams County, Pennsylvania.[2] Statement of Undisputed Facts at ¶ 1 ("Doc. #131-3"). Mr. Lease also

---

[1] I have viewed the facts in the light most favorable to the Plaintiff, as the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A number of Mr. Lease's denials challenge whether the facts are material. I have not relied upon those facts to which Mr. Lease made proper objections.

[2] Hamilton Township is a township operating in accordance with the Pennsylvania Second Class Township Code and the Municipalities Planning Code. Doc. #131-3 at ¶ 13.

owns a number of other properties in Hamilton Township.[3]  Statement of Disputed Facts at ¶ 2 ("Doc. #145").  Hamilton Township follows the Uniform Construction Code in accordance with the Pennsylvania Construction Code, 35 P.S. §7210.101, et. seq., which is comprised of international standards, including but not limited to dimensions for doorways and hallways and standards for support beams and electricity.  Doc. #131-3 at ¶¶ 69-70.  Mr. Balutis has served as the Hamilton Township Zoning Officer and Code Official since January of 2006.  Doc. #131-3 at ¶ 15.  Hamilton Township's alleged desire to retaliate against Mr. Lease stems from a history of disputes between the two that includes a number of lawsuits.[4]  Statement of Disputed Facts at ¶ 74 ("Doc. #145").

A.  <u>Protected Conduct: Alwine Meadows Property</u>

On October 28, 2000, Mr. Lease filed a subdivision plan with Hamilton Township for a proposed subdivision development known as "Alwine Meadows," which was denied by the Hamilton Township Board of Supervisors due to the plan's deficiencies.  Doc. #131-3 at ¶¶ 20, 25.  Mr. Lease successfully appealed the denial in the Adams County

---

[3] These properties include: (a) 124 Gun Club Road (which is not subject to this lawsuit); (b) 150 Gun Club Road (rented as a residence to a family); (c) 160 Gun Club Road (where Lease resides; additional apartment units are located/rented there); (d) 170 Gun Club Road (same as 186 Gun Club Road) (rented as a residence to a tenant family); (e) 1080 The Spangler Road (16 acres large, where a sawmill and outbuildings exist); and (f) 4000 Carlisle Pike (also referred to as 2000 Carlisle Pike, comprising 75 acres, which is subject to a subdivision application known as "Alwine Meadows").

[4] Mr. Lease and the township have been involved in a number of state court actions involving zoning violations as well as at least two other federal court suits brought against the township for violations of Mr. Lease's constitutional rights.

Court of Common Pleas because the letter from the township failed to provide sufficient notice of its reasons for denial.[5]  Doc. #131-3 at ¶ 27.

Shortly after Mr. Lease's success in the trial court, on July 6, 2004, for the consideration of $20,000, he executed an "Option to Buy Real Property" with Fred Linkous for the Alwine Meadows property for $1.3 million.  Doc. #131-3 at ¶¶ 32-33.[6]  The sale and purchase of the property was contingent upon Mr. Linkous securing municipal approval for at least fifty-eight (58) building lots.[7]  Doc. #131-3 at ¶¶ 37-38.  On April 3, 2006, the township conditionally approved Mr. Linkous' Alwine Meadows subdivision plain and a year later the plan received conditional final plan approval.[8]  Doc. #131-3 at ¶¶ 42-43.  Because Mr. Linkous and Mr. Lease were not able to come to an agreement concerning the financing, they were unable to record the plan, which remains effective.[9]  Doc. #131-3 at ¶¶ 48-49.

---

[5] Hamilton Township then appealed the trial court's decision and the Commonwealth Court affirmed.  Doc. #131-3 at ¶ 30.  Finally, the Supreme Court denied Hamilton Township's Petition for Allowance on March 10, 2006.  Doc. #131-3 at ¶ 31.

[6] That same agreement was modified on October 4, 2004, adding a monthly non-refundable payment of $1,000 to be applied to the total purchase price of Alwine Meadows.  Doc. #131-3 at ¶¶ 35-36.  Mr. Linkous could not use Mr. Lease's plan, which was deemed approved because of the engineering deficiencies in the plan. Doc. #131-3 at ¶ 39.

[7] In Mr. Linkous' deposition, he acknowledged that he would submit his own subdivision plan due to the animosity between Mr. Lease and the township.  Doc. #145 at ¶¶ 39-40.

[8] The only outstanding condition that remains is payment for park and recreation fees, which are a standard requirement with a set fee imposed by Ordinance by the Board of Supervisors as a requisite for recording a subdivision plan.  Doc. #131-3 at ¶¶ 50-53.

[9] These complications erupted in litigation between Mr. Linkous and Mr. Lease after Mr. Lease demanded a written addendum to the option agreement.  Mr. Linkous filed a Complaint on March 30, 2006 and Mr. Lease filed a Counterclaim.  The parties alleged various contract and breach of contract claims. Doc. #131-3 at ¶¶ 54-59.  The case between Mr. Lease and Mr. Linkous has recently closed due to a settlement agreement.  Doc. #145 at ¶ 60.

B. <u>Alleged Unlawful Searches: Property at 160 Gun Club Road</u>

*1. Background*

On February 8, 2000, Hamilton Township filed a Complaint against Mr. Lease for code violations at his residential property located at 160 Gun Club Road. This dispute was resolved over six (6) years later when the Adams County Court of Common Pleas entered an Order that summarized an agreement between Mr. Lease and the Township.[10] Doc. #131-3 at ¶¶ 63-64. The Order, dated March 14, 2006, gave the Township "unlimited access no more than one time per month to the second floor" of the rear building located at 160 Gun Club Road and ordered Mr. Lease to permit the Township to conduct an inspection of the front building within thirty (30) days to determine if there were "any ordinance or code violations."[11] Doc. #131-3 at ¶¶ 65-66. The Court also

---

[10] The exact text of the Order states:

> Now this 14th day of March 2006....the parties have entered into an agreement for resolution of this litigation, which they request become part of an Order of Court, and that it have the enforceability commensurate with the contempt authority of the Court. The agreement relates to property known as 160 Gun Club Road in Hamilton Township and currently owned and titled in the name of David r. Lease. The agreement is as follows:
> 1) With respect to the building at the rear of the property, Mr. Lease agrees that the second floor shall be used solely for storage purposes.... In order to insure compliance... Mr. Lease shall provide unlimited access to the township no more than one time per month to the second floor of that building.
> 2) Within 30 days of this date the parties shall conduct a walk-through of the front building on the 160 Gun Club Road...The purpose of the walk-through is to determine if there are any ordinance or code violations. If any such violations are determined, the township shall provide or shall issue citations to Mr. Lease and he shall be provided 60 days after service of those citations to remedy the alleged violations. In order to insure compliance with all ordinances and codes that are applicable to the front building, the township shall be then subsequently provided with access to that building no more than one time every six months....
> 5) This agreement is not applicable to any complaints presented to the township by other parties to which the township is required or chooses to investigate.

[11] The "front" building at the 160 Gun Club Road address consists of six apartment units (three on the first floor and three on the second floor) and is adjacent to a black top parking lot. Doc. #131-3 at ¶¶ 5-6. There is also a "rear" building located behind the "front" building, which consists of four apartment units on the first floor and three apartments converted to storage on the second floor. Doc. #131-3 at ¶¶ 7-9.

4

ordered that if the township found any violations, it was directed to "issue citations to Lease." Doc. #131-3 at ¶ 67-68.

   *2. Inspections*

On March 31, 2006, Hamilton Township Solicitor requested that defendant, Ronald Balutis, conduct an inspection of 160 Gun Club Road pursuant to a March 14, 2006 Court Order. Doc. #131-3 at ¶ 17. Mr. Lease was present for this inspection and gave Mr. Balutis access to the building as well as some tenant apartments. Doc. #131-3 at ¶¶ 75-76. However, Mr. Lease did not object to Mr. Balutis' physical presence on the property but continually objected to the scope of his inspection. Doc. #131-3 at ¶¶ 79-80. During the inspection, Mr. Balutis measured the dimensions of various areas of the building, such as hallways and rafters, and he inspected the second floor of the rear building. Doc. #131-3 at ¶¶ 77-78. Mr. Lease alleges that these inspections were outside the scope of the Court Order.

A few days after Mr. Balutis' first visit to 160 Gun Club Road, he returned with Timothy Beard, a supervisor in Hamilton Township, to measure the public parking lot adjacent to the building that Mr. Lease's tenants and their guests used to park.[12] Doc. #131-3 at ¶¶ 81-83. After the inspections, the township informed Mr. Lease that they required a structural evaluation by a licensed engineer to determine whether the construction complied with the township's building code. Doc. #131-3 at ¶¶ 90, 93. Mr. Lease refused to permit the evaluation, and the township's solicitor filed a Petition for

---

[12] The Court Order authorized the township to inspect this parking lot pursuant to the decision in Lease v. Tyler, et al., No. 1:05-cv-618, 2008 U.S. Dist. LEXIS 49743 (M.D. Pa. June 30, 2008). Doc. #131-3 at ¶ 86.

Contempt with the Adams County Court of Common Pleas in September 2006.  Doc. #131-3 at ¶ 91-92.

On January 13, 2010, the township issued a violation letter requesting that the Mr. Lease remedy the building code violations within sixty (60) days; the township then sent a follow up letter, but Mr. Lease did not comply.  Doc. #131-3 at ¶¶ 95-97.  On December 7, 2010, Balutis submitted a violation notice identifying all of the Code violations found during the March 2006 inspection, which have yet to be remedied.  Doc. #131-3 at ¶¶ 98-99.

### 3. *Additional Allegations of Retaliation*

On at least one other occasion after the March 31, 2006 inspection, Mr. Lease alleges that Mr. Balutis drove slowly by his property at 160 Gun Club Road and wrote things on a clipboard.  Doc. #145 at ¶ 141.  On another occasion, Mr. Balutis allegedly drove by Mr. Lease and gave him the middle finger.  Doc. #145 at ¶ 141.

## C. Other Alleged Retaliatory Action: 1080 Spangler Road Property

### 1. *Alleged Interference with Purchase of Zoeller Property*

In early 2006 through 2007, Mr. Lease was in the process of negotiating and purchasing Bruce Zoeller's property located at 1080 Spangler Road.  Doc. #131-3 at ¶ 104.  While under an agreement to purchase the property, Mr. Lease alleges that Mr. Balutis interfered with the sale by threatening to issue citations in response to a citizen's complaint concerning the property.  Doc. #131-3 at ¶ 105, 112.  After conducting an inspection, Mr. Balutis determined that Mr. Lease had not violated the township Code in this instance.  Doc. #131-3 at ¶ 107.

### 2. *March 2008 Enforcement Action: 1080 Spangler Road Property*

In spring of 2008, Mr. Balutis received a call complaining that Mr. Lease was excavating without a permit at the 1080 Spangler Road property.[13]  Doc. #131-3 at ¶ 115. The parties disagree as to whether Mr. Lease was excavating or merely lying stone in his driveway.  Doc. #145 at ¶ 116.  In either case, Mr. Balutis told Mr. Lease to stop working.  Doc. #131-3 at ¶ 118.  Soon after, Mr. Balutis received another call and arrived at the Spangler Road property to find Mr. Lease installing a silt-screen.  Doc. #131-3 at ¶¶ 119-120.  Mr. Lease stated that he performed the work at the discretion of the resource conservationist for the Adams County Conservation District, Russell Ryan.  Doc. #145 at ¶¶ 120-121.[14]  The Adams County Conservation District does not issue permits for excavation, and Mr. Lease never contacted Hamilton Township about obtaining an excavation permit.  Doc. #131-3 at ¶¶ 125, 131.

On February 20, 2008, the township issued a violation notice for excavating and grading without a permit.  Doc. #131-3 at ¶ 132.  Mr. Balutis then visited the work site a second time and approached Mr. Lease while he was on a tractor.  Mr. Lease claims that he ignored Mr. Balutis, but eventually had to stop the tractor to avoid hitting him.  Doc. #145 at ¶ 133.  Although Mr. Balutis disputes this, Mr. Lease testified that as he was exiting the tractor, Mr. Balutis grabbed his arm and pulled him down.  Doc. #145 at ¶ 133.

---

[13] Hamilton Township requires a permit for grading and excavating.  Doc. #131-3 at ¶ 114.

[14] Mr. Ryan recommended that Mr. Lease install a silt-screen to prevent erosion, but acknowledged that the work Mr. Lease had performed was excavation.  Doc. #131-3 at ¶¶ 126, 128.

A. **Procedural History**

On January 2, 2007, Lease commenced the instant action by filing a Complaint against eight defendants, including Mr. Balutis. After two of the defendants, George Taughinbaugh and Ron Plank, were dismissed from the case, Mr. Lease filed an Amended Complaint on April 23, 2009 (Doc. #65) against four of the eight original defendants: Douglas Fishel, Timothy Beard, Hamilton Township and Ronald Balutis. After granting various motions to dismiss, the only claims remaining were the First and Fourth Amendment claims against Balutis and the claims against Douglas Fishel.[15]

On April 14, 2010, Lease filed a Second Amended Complaint against Mr. Balutis and Mr. Beard only (Doc. #109). After the defendants' joint motion to partially dismiss the complaint (Doc. #112) was denied, Mr. Balutis and Mr. Beard answered the Complaint on February 10, 2011. At the conclusion of discovery, the parties stipulated to the dismissal of Mr. Beard, which left Mr. Balutis the sole remaining defendant in the action. Mr. Lease asserts First and Fourth Amendment claims as well as a claim for Civil Conspiracy against Mr. Balutis.[16] On October 10, 2011, Mr. Balutis filed this motion for summary judgment, which, for the reasons set forth, I will grant the motion.

---

[15] The Court also granted Defendants' Motion for a More Definite Statement, and required Mr. Lease to file an amended complaint providing additional factual specificity concerning: (1) the nature and scope of the Adams County Court inspection authorization for Lease's property; (2) the extent and nature of Balutis' 2006 search of Mr. Lease's property; and (3) Balutis denial of certain permits and interference with Mr. Lease's purchase of property. Doc. #104.

[16] Plaintiff offers no factual or legal argument to support his conspiracy claim in his brief and, therefore, defendant is entitled to summary judgment with respect to the civil conspiracy claim (Count II) as a matter of law.

**B. Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party moving for summary judgment always bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S.

at 255. The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present clear evidence from which a jury can reasonably find in its favor. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999). Finally, in reviewing a motion for summary judgment, the Court does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion. Siegel Transfer v. Carrier Express, 54 F.3d 1125, 1127 (3d. Cir. 1995).

## II. Discussion

To establish liability under 42 U.S.C. §1983, a plaintiff must prove two elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Harvey v. Plains Tp. Police Dept., 421 F.3d 185, 189 (3d Cir. 2005) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). Section 1983 is not a source of substantive rights; rather, it is a method to vindicate violations of federal law committed by state actors. See, e.g., Neumeyer v. Beard, 421 F.3d 210, 213 (3d Cir. 2005); Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). To establish a claim under this section, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." 42 U.S.C. § 1983.

A. Fourth Amendment Claim

The Fourth Amendment protects against unreasonable searches or seizures.[17] See e.g., United States v. Sharpe, 470 U.S. 675, 683, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985). The threshold inquiry for a Fourth Amendment claim is whether the government's conduct amounted to a "search." United States v. Hartwell, 436 F.3d 174, 177 (3d Cir. 2006). Reasonableness of the defendant's actions must be viewed in consideration of the circumstances of the surrounding search. U.S. v. Montoya de Hernandex, 473 U.S. 531, 537 (1985). The purpose of the Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Mun.Court of City and County of San Francisco, 387 U.S. 523, 528 (1967).

Administrative searches, such as for code and zoning enforcement, can constitute "significant intrusions upon the interests protected by the Fourth Amendment . . . ." Id. at 534. To determine the scope of the consent granted, the court must apply an objective standard to assess what a reasonable person would have understood. Florida v. Jimeno, 500 U.S. 248, 251 (1991). Reasonableness is an inquiry that calls for the consideration of, "on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate

---

[17] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

government interests," United States v. Williams, 417 U.S. 373, 376 (3d Cir. 2005) (quoting United States v. Knights, 534 U.S. 112, 118-19 (2001)).

Plaintiff concedes that there was a Court Order, but that he believed the scope of the search was to look for holes and make sure there was hot water, not to use a tape measure and inspect for building code violations.  Doc. #136 at 13.  However, plaintiff's brief specifically states that "Plaintiff and the township entered into an agreement to allow a 'walk-through' of the property to allow the township to check for all code violations."  Id.  Plaintiff argues that he informed Mr. Balutis that he thought the inspection was outside the scope, but Mr. Balutis did not stop.

The defendant first argues that Mr. Lease consented to the inspection as per the Court Order and that, if anything, the Court Order afforded Mr. Lease greater protection than that given under the Fourth Amendment and that Mr. Lease has no expectation of privacy in the public parking lot.  The defendant next argues that his conduct in this situation was objectively reasonable.  Finally, the defendant argues that Mr. Lease's argument cannot succeed based on issues of standing and statute of limitations.[18]

To determine whether it would have been clear to Mr. Balutis that his conduct was unlawful in the situation he confronted, the Court must examine the circumstances of Balutis' investigation, the extent of his search, and the reasoning for investigating what he did on Mr. Lease's property.  Mr. Lease contends that Mr. Balutis exceeded the scope

---

[18] Defendant argues that plaintiff failed to file his Amended Complaint within the two-year statute of limitations for civil rights violations because the alleged incident occurred on March 31, 2006, and plaintiff did not file until April 23, 2009. Doc. #132 at 15-16. Plaintiff argues that he filed his original Complaint on January 3, 2007 was well within the statute and was sufficient to put the defendant on notice. Because I find that summary judgment should be granted on the merits, I do not feel it is necessary to determine whether the statute of limitations would preclude this action.

of the Order by inspecting the rafters, measuring the hallways and the parking lot, and entering the tenants' apartments.  However, Hamilton Township follows the UCC, which is comprised of code standards and regulations for dimensions of residential apartment buildings.  These standards include minimum measurements for hallways, stairways, and support beams. It is an important governmental interest to have safe and secure residential dwellings that comply with international safety standards for the protection of its citizens.

Mr. Lease's argument that Mr. Balutis' actions were unreasonable in the scope of the Court Order and, therefore, violated his Fourth Amendment rights, is not persuasive.[19] Although Mr. Lease contends that measuring rafters and other dimensions in the building was unreasonable, he offers no evidence of the criteria ordinarily applied during a building code safety inspection.  He merely states that he believed a walk through meant simply to look for holes and check for hot water, but the Order states that the inspection was to check for "any ordinance or code violations."  Doc. #136 at 13.  The Order even goes on to state that "[i]n order to insure compliance with all ordinances and codes that are applicable to the front building, the township shall be … provided with access to that building[.]"  Given the scope of the Court Order, Mr. Balutis' actions were reasonable and, therefore, constitutional under the circumstances.  Finally, the intrusion upon Mr.

---

[19] Taking measurements of the parking lot cannot be considered in the circumstances evaluating the reasonableness of the search.  There is "no justified expectation of privacy as to … the parking lot open to all users of the apartment building."  LaFave, 1 Search & Seizure § 2.3(f).  Previously, this court ruled that Mr. Lease has no protected privacy interest in the parking lot in front of 160 Gun Club Road.  (Doc. 104 at p. 14-15).

Additionally, the right to privacy protected by the Fourth Amendment belongs to the tenant, and the landlord relinquishes all privacy rights in the unit for the term of the lease.  Miller v. Hassinger, 173 Fed. Appx. 948, 952 (3d. Cir. 2006); U.S. v. Montefiore, et al., 1998 WL 188849 (E.D. Pa. 1998).

Lease was de minimus; the act of visually inspecting the dimensions in a building versus using a tape measure to accurately record those dimensions does not rise to a constitutional violation. Therefore, Mr. Lease has failed to establish that Mr. Balutis engaged in a search as contemplated by the Fourth Amendment.

  B. First Amendment Retaliation Claim

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,[20] and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Tp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)). The key inquiry in whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. Id.

To establish a causal connection, a plaintiff usually must prove either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Id. If temporal causation cannot be established the plaintiff must show that "from the evidence gleaned from the record as a whole," that the trier of fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

---

[20] Plaintiff must show that the exercise of this First Amendment right plays some substantial role in the relevant decision. Suppan v. Dadonna, 203 F.3d 228, 236 (3d Cir.2000).

Mr. Lease alleges that he has a protected First Amendment right to pursue his claims against Hamilton Township and that these actions caused a pattern of retaliatory conduct by Mr. Balutis. In his brief Plaintiff claims that

> as a result of these actions, Defendant Balutis retaliated against him by conducting a 'search' of his property beyond the 'search' agreed to by himself and the township, driving by his property with a clipboard, giving the Plaintiff the middle finger, making the Plaintiff stop work on his property, and dragging the Plaintiff off of his tractor.[21]

Doc. #136 at 17. Mr. Lease has not provided evidence of a temporal connection between his protected court actions and the alleged retaliation needed to establish the requisite causal link. He merely states that "the time frame in which Defendant Balutis engaged in these actions establishes that Defendant Balutis's actions were in retaliation for Plaintiff's exercise of his First Amendment rights." Doc. #136 at 17. In fact, the inspection occurred on March 31, 2006, which was two years after Mr. Lease initially prevailed against the township and six months after the final appeal.

Mr. Lease also fails to show that the evidence from the record as a whole is sufficient to infer causation. Mr. Lease has failed to present enough evidence of Mr. Balutis' retaliatory motive to support a finding of causation. He has not provided evidence that Mr. Balutis was even aware of Mr. Lease's protected activity. Based upon Mr. Lease's evidence, any township employee who engaged in conduct, which Mr. Lease perceived as objectionable, would potentially be liable for retaliation. Mr. Balutis was

---

[21] Defendant addresses additional actions, which it presumed to be included in the alleged retaliatory conduct, such as its alleged interference with Mr. Lease's purchase of property, but the plaintiff does not mention these actions in its brief. Further, these additional contacts between the plaintiff and defendant merely relate to the defendant's job duties and Mr. Lease has not produced any evidence indicating retaliation.

ordered by the Court to perform an inspection to which Mr. Lease agreed and Mr. Balutis' other encounters with Mr. Lease were all perpetuated by civilian complaints.

Additionally, the alleged retaliatory conduct was insufficient to "deter a person of ordinary firmness from exercising his First Amendment rights...." Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). I find that the "objectionable conduct" regarding the search of 160 Gun Club Road did not violate Mr. Lease's Fourth Amendment Rights because it was reasonable under the circumstances. Aside from the March inspection, Mr. Lease simply claims that Mr. Balutis, conspicuously drove past his property and wrote on a clipboard, made an obscene gesture, and entered onto Mr. Lease's property telling him to stop work and allegedly grabbing his arm while he was getting off of his tractor.

Mr. Balutis was prompted by a citizen's complaint when he responded to the site of alleged excavation. When he arrived, on one of the occasions, Mr. Lease was purposefully ignoring him, which prompted Mr. Balutis to walk up to the tractor. Even if Mr. Balutis did yell and grab Mr. Lease's arm, he was clearly trying to get Mr. Lease's attention to discuss the complaint about excavation not to retaliate against Mr. Lease for his 2003 lawsuit against the township. Mr. Balutis even permitted Mr. Lease to install the silt-screen, without the required permit, when he discovered that the Adams County Conservation District had recommended it.

Given the allegations above, this is not a case where the record considered as a whole would support a finding of causation. The alleged conduct by Mr. Balutis would not deter a reasonable person from exercising his First Amendment Rights. His

16

arguments lack support in the record and merely speculate retaliatory motives by Mr. Balutis. Accordingly, these facts do not create a genuine issue of material fact.

C. Qualified Immunity

The doctrine of qualified immunity provides that state actors who perform discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Hill v. Borough of Kutztown, 455 F.3d 225, 244 (3d Cir. 2006) (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)).

Courts use a two-prong analysis to determine whether a government official is entitled to qualified immunity. Pearson v. Callahan, 555 U.S. 223 (2009). First, courts must "decide whether the facts ... shown ... make out a violation of a constitutional right." Id. at 815-16 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). And second, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 816 (quoting Saucier, 533 U.S. at 201). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. at 815

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). This analysis "must be undertaken in light of the

specific context of the case, not as a broad general proposition . . . ." Id. Accordingly, qualified immunity analysis protects all "but the plainly incompetent or those who knowingly violate the law." Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005)).

I previously held that Mr. Balutis' actions did not violate Mr. Lease's constitutional rights and, therefore, the plaintiff has not established the first prong of the test. However, even if Mr. Balutis' conduct did violate the Constitution, he did not do so in the face of a "clearly established" constitutional right and is entitled to qualified immunity under the second prong of the qualified immunity analysis. The March 31, 2006 search was authorized by the Adams County Court of Common Pleas in its Order allowing for inspection and, therefore, Mr. Balutis reasonably believed that his presence on the property was lawful. Mr. Balutis continually acted within the scope of his duties by investigating civilian complaints in connection with Mr. Lease's property. The mere fact that Mr. Lease clearly objected does not make his rights clearly established. Accordingly, Mr. Balutis is entitled to qualified immunity because the Mr. Lease has failed to provide evidence supporting a claim of violation of clearly established law.

## IV. Conclusion

Plaintiff has presented insufficient evidence to support his claims under 42 U.S.C. § 1983. Therefore, I will grant summary judgment in favor of the defendant with respect to all of plaintiff's claims.

An appropriate order follows.